THE AUDITOR *against* ANTHONY H. DAVIES, AND OTHERS.

APPEAL *from Chicot Circuit Court.*

The Auditor of Public Accounts is not a judicial officer, nor can he exercise judicial
power or authority.

Whether the issuing of a distress warrant against a sheriff and his securities by the
Auditor is an exercise of judicial power, left undecided.

The power and authority of each Circuit Judge in this State are restricted and limited
to the prescribed and ascertained boundaries of his circuit.

No writ or process, issuing out of any Circuit Court, can run or be executed beyond
the limits of the territorial jurisdiction of the court out of which it issues, according
to the principles of the common law.

Consequently, a Circuit Court of one county cannot run its writ of process into any
other county, without some legislative provision on the subject.

There being no legislative provision, authorizing the Circuit Court of Chicot county
to issue a writ of certiorari to the Auditor of Public Accounts, a writ issued to the
county of Pulaski is void.

A sovereign state or government cannot be sued without some legislative provision
authorizing such proceeding; and the statute must be strictly followed.

All suits against the State must be brought in the Circuit Court of the county in which
the seat of government is situate, and be against the State by name; and the process
must be a summons executed by delivering a copy to the Auditor.

The Auditor is by law to keep his office at the seat of government: consequently he
is beyond the reach of the jurisdiction of the Chicot Circuit Court, or any order of
the Judge of that Circuit for or against the State.

A certiorari to the Auditor, to bring before the Circuit Court the proceedings of the
Auditor in issuing a distress warrant, is, to all intents and purposes, a suit against
the State.

All proceedings on such writ are therefore extra-judicial, and *coram non judice.*

Absent, RINGO, *Chief Justice.*

Upon a petition and affidavit of Anthony H. Davies, and others, a
writ of certiorari to the Auditor of Public Accounts of the State was
issued by the Judge of the Chicot Circuit Court, returnable unto that
court, with a supersedeas to the Coroner of Chicot county, to bring
before the court a distress warrant issued by the Auditor against them
as securities of the former Sheriff of Chicot county, with the proceed-
ings of the Auditor prior to issuing the warrant, for revision in that
court.   The writ of certiorari was issued to, and executed in, the
county of Pulaski.   Upon the hearing, that court adjudged the dis-
tress warrant void, and to have issued without constitutional power in
the Auditor, and ordered it to be perpetually superseded.   From this
decision the Auditor appealed.   The whole merits of the case were

argued in this court, but the case having been decided on a preliminary question, it is not necessary to recite the facts of the case, or the arguments upon the principal questions involved.

CLENDENIN & HEMPSTEAD, for the appellant:

The Circuit Court had not the authority to issue a certiorari directed to Elias N. Conway, Auditor of Public Accounts of the State of Arkansas, either in vacation or in term time. The Constitution of the State of Arkansas gives to the Supreme Court the power to issue writs of error and supersedeas, certiorari and mandamus, habeas corpus and quo warranto, and other remedial writs, and power to hear and determine the same. The 2d Section, 6th Article of the Constitution constitutes and gives to the Circuit Court original jurisdiction in all criminal cases, which shall not be otherwise provided for by law; and exclusive original jurisdiction in all crimes amounting to felony, at common law; and original jurisdiction of all civil cases which shall not be cognizable before Justices of the Peace, until otherwise directed by the General Assembly; and original jurisdiction in all matters of contract when the sum in controversy is over one hundred dollars. *Sec. 3, Const., 6th Art.* And in section 5, the Constitution says, the Circuit Court shall exercise a superintending control over the County Courts and over Justices of the Peace in each county of their respective circuits, and shall have power to issue all necessary writs to carry into effect their general and specific powers.

What, then, are their general and specific powers? They are a superintending control over the inferior judicial tribunals; in the exercise of which they may issue writs of mandamus, certiorari and habeas corpus, but these writs cannot be extended to any other than those inferior tribunals. Where, then, did the Circuit Court, get the power to issue this writ of certiorari to an officer belonging to one of the independent branches of the government? If they do not acquire it under the Constitution they cannot acquire it at common law, because it is a tribunal exercising its jurisdiction under the provisions of the Constitution; and when that unchangeable rule of government says that the Circuit Court shall do one thing, it can do that, and no other. *Expressio unius est exclusio alterius.* As well might

the Circuit Courts claim the power of issuing a quo warranto exercising a franchise, as to issue a certiorari to a department of equal authority and importance with its own, or any other writ not necessary to carry out its general and specific powers, as one to carry out a power never conferred upon it by the Constitution.

A certiorari is an original writ issuing out of the Court of Chancery, or King's Bench, directed in the King's name to the Judges or officers of the inferior courts, commanding them to certify or to return the records of a cause depending before them—to the end that the party may have the more sure and speedy justice done before the King, or such other Justices as he shall assign to determine the cause. 1 *Jacobs' Law Dic.* 411; 1 *Tidd* 329.

According to this authority the writ of certiorari could only issue from a superior to an inferior court. Anciently, it seems no other court but the Chancery could grant a certiorari on a suggestion that there was nothing before them; but it is now settled that a record may be removed into the King's Bench as well by certiorari out of that court, as by a mittimus out of Chancery. 1 *Tidd* 333.

The writ of Chancery should be directed to the Judge or Judges of the inferior courts from which the cause is intended to be removed. 1 *Tidd* 334. A certiorari does not lie to remove any other than judicial acts. *Jacobs' Law Dic. vol.* 1, *p.* 412. A certiorari lies to every inferior jurisdiction of record. 1 *Salk.* 144.

These authorities will sustain the position before taken that the writ of certiorari can only issue from a superior to an inferior tribunal; and the Circuit Court of Chicot county therefore erred in issuing the writ in this case.

TRAPNALL, COCKE & PIKE, *Contra:*

The writ of certiorari in England was used for various purposes. It is defined in Bacon as an original writ issuing out of Chancery or King's Bench, directed in the King's name to the Judges or officers of inferior courts, commanding them to return the record depending before them, to the end the party may have the more sure and speedy justice before him, or such other Justices as he shall assign to determine the cause.

One principal use of the writ was to bring into the court of King's Bench the record of convictions in criminal matters before inferior courts or tribunals.

Another of its uses was, that where in the Common Pleas the defendant pleaded *nul tiel record* in a suit upon a judgment in King's Bench, then the plaintiff could obtain a certiorari out of Chancery to send the record thither, which might then by mittimus be sent into the Common Pleas. *Luttrel vs. Lea, Cro. Car.* 297; *Pitt vs. Knight*, 1 *Sand.* 98.

Again: it was extensively used as a remedy in the nature of a writ of errors in civil cases, as in this way it generally issued from the court of King's Bench. Where the judgment complained of was rendered by a court proceeding according to the course of the common law a writ of error lay, and there the superior court was authorized to render the same judgment as the court below ought to have rendered. But if the inferior tribunal proceeded in a course different from that of the common law, the only mode of correcting any error that might have occurred was by certiorari, on which the superior court could only affirm the proceedings if regular, or quash them if irregular, by the court below having exceeded its jurisdiction or otherwise. *Dr. Groenvelt vs. Dr. Burwell, et al.* 1 *Ld. Raym.* 469; *S. C.* 1 *Salk.* 144; *Comm. vs. Ellis*, 11 *Mass.* 465 ; *Edgar vs. Dodge*, 4 *Mass.* 670 ; *Melvin vs. Bridge*, 3 *Mass.* 305; *Vandusen vs. Comstock*, 3 *Mass.* 184.

In this way it was held that the writ of certiorari for the reason, that said HOLT, Chief Justice, in *De Groenvelt vs. Burwell, Salk. ubi sup.* "No court can be intended exempt from the superintendency of the King in this court of King's Bench. Thus the writ lay to Justices in Eyre: to the College of Physicians, 1 *Salk.* 144: to Commissioners of Sewers *anon.* 1 *Salk.* 145, 1 *Strange* 609: to a Coroner who has taken an inquest, or after his death to his executor, *Bac. ab. certiorari*, (F): to a Bishop to certify admission, institution, and induction to a church, *Com. Dig. cert.* (A) (1): to a Sheriff for the record of a *redessurin* or *post dessurin* before him, *ib:* to Sheriffs or Coroners to certify an outlawry, *ib.* And in every such case it lay, where the statute did not *expressly* and *totidem verbis* take away the certiorari, and direct that *no certiorari should* issue even if it were

provided that the decision in the inferior court should be final. *Rex vs. Mosely*, 2d *Burr*, 1042; but it did not to remove mere ministerial acts, but only to remove judicial acts, *Rex vs. Lediard*, *Sayer* 6.

There was still another manner in which the writ of certiorari was used, and this was where a party was sued in an inferior court, to transfer his cause by certiorari into one of the King's Courts for trial. In this way the writ might issue as well from the Common Pleas as from King's Bench. The ground upon which this writ was allowed may be judged of from *Cross vs. Smith*, 3 *Salk.* 79. That was a case upon a certiorari from the Common Pleas to the Court of Ely, and the writ being allowed by the Common Pleas, and they afterwards proceeding thereon, a writ of error was brought into King's Bench, and that matter was assigned for error. The defendants pleaded a grant of conusance of pleas to the Bishop of Ely, and an allowance thereof in *B. Ranno* 21, *Ewd. III*, and that the cause did arise within the jurisdiction. This was returned on the certiorari, and there was a demurrer thereto, and HOLT, Chief Justice, held that there were three sorts of inferior jurisdictions.

1st. One whereof is *tenere placeta*, and this is the lowest sort, for it is only a concurrent jurisdiction, and the party may sue there or in the King's Bench if he will ; and in this case it appears from the decision, if the case is commenced in the inferior court, the party sued has the right to remove his case into one of the King's courts by certiorari.

2nd. *Conusance of pleas*, whereby a right personal to the lord himself is vested in the lord of the franchise to hold the plea, and here to prevent oppression a certiorari will lay to take the case into one of the King's courts.

3rd. *An exempt jurisdiction*, as where the King grants to the inhabitants of a city that they may be sued within their city.

And so he determined that "there is no jurisdiction which can withstand a certiorari," 1 *Salk.* 148; *S. C.* 2nd *Ld. Raym*, 836, *S. C.*

Another ground on which the certiorari often issued was to draw to the court of King's Bench jurisdiction over cases which by law belonged to that court. *Tidd.* And it is principally upon this ground that we shall contend for the power of the Circuit Court to issue the

writ in this case. The court of King's Bench was a court of extensive jurisdiction, both original and appellate. The original jurisdiction belongs in this country to the Circuit Court, and they as to that jurisdiction, are the court of King's Bench of this country. The issuing of writs of certiorari was sometimes an exercise of original, and sometimes of appellate jurisdiction, and so far as it was used to draw to that court, or to the Common Pleas, the original jurisdiction of matters which of right those courts were entitled to adjudicate upon, it must be held that they belong to the Circuit Courts of this country in the same manner and to the same intent. In the United States the writ has been variously used in the different States. In Massachusetts it is only used by statute as process of error. In New York it has a more extensive application. It is there held that whenever the rights of an individual are infringed by the acts of persons clothed with authority to act, and who exercise that authority illegally and to the injury of the individual, he may have redress by certiorari. *Lawton vs. Com. of Cambridge*, 2 *Caines*, 179; *Wildy vs. Washburn*, 16 *T. R.* 49. Thus it lays there, to remove the acts of Commissioners of Highways, the appointment of a Constable by Justices of the Peace, the acts of Canal Appraisers. *Fonda vs. Canal Appraisers*, 1 *Wend*. 288: to Commissioners of Insolvents, *anon* 1 *Wend*. 90.

So it lies to the Trustees of a village who have widened a street, and so injured the property of an individual, and levied his damages sustained thereby on the owners of property benefitted, in behalf of the persons upon whom the damages were so levied; and it was laid down that though the party might have a remedy by action, that did not prevent him from pursuing his remedy by certiorari. *Straw vs. Trustees of Rochester*, 6 *Wend*. 564; and see *Albany Water Works Co. vs. Albany Mayor's Court*, 12 *Wend*. 292; *Bath Bridge Co. vs. Magour*, 8 *Greenl*. 292.

If then the Circuit Court had the power to issue the certiorari in a case which properly fell within its own jurisdiction, as a means to draw to itself jurisdiction given to it by the Constitution, and upon the application of persons entitled to be heard and tried in the court of highest original jurisdiction in the State, the persons entitled to be tried and have their liabilities to the State determined by the course

of the common law and by a jury of their peers; if the Circuit Court representing here as to one portion of the judicial power, the courts both of King's Bench and Common Pleas, and exercising also the original civil and ceremonial jurisdiction of both these courts, can issue this writ in a case proper therefor, and can interfere to prevent a usurpation of its power by another and an inferior tribunal, then it remains to inquire whether the case presented by the petition was sufficient to warrant the exercise of that power. We have already examined and presented to the court the facts stated in the petition.

LACY, *Judge*, delivered the opinon of the court:

There have been several distinct propositions raised by the assignment of errors and discussed at the bar that we do not feel ourselves called on at this time to determine. The main question in this cause is, did the court below rightfully exercise jurisdiction in the premises?

Before we proceed to settle this point, it may be well to define the meaning of the writ of certiorari, according to the English practice, and also to state a few of the most prominent uses to which it was applied. Lord BACON defined it to be, " an original writ issuing out of Chancery, or the King's Bench, directed in the King's name to the Judges or officers of the inferior courts, commanding them to return the record pending before them—to the end that the party may have more sure and speedy justice, before him or such other Justices as he shall assign to determine the cause." One of its uses was, to bring into the court of King's Bench the record of conviction in criminal matters before inferior courts or tribunals. Another of its uses was, where a party was sued in an inferior court to transfer his cause into one of the King's courts for trial. In this way the writ issued, as well from the Common Pleas, as from the King's Bench. Again, it is extensively used as a remedy in the nature of a writ of error in civil cases; and when that is the case, it generally issued from the court of Kings Bench. When an inferior tribunal proceeds in a cause contrary to the course of the Common Law, then the writ lay to correct the error, if any had accrued. If the court below exceeded its jurisdiction, the Supreme Court would quash the procedings for irregularity; but when, upon inquiry, they were found to be regular,

the judgment below was affirmed. *De Groenvelt vs. Dr. Burwell, et al.*, 1 *L. Ray.* 469; 1 *Salk.* 144; *Comm. vs. Ellis*, 11 *Mass. R.* 465; *Edgar vs. Dodge*, 4 *Mass.* 667; *Van Dusen vs. Comstock*, 3 *Mass.* 184; *Cross vs. Smith*, 3 *Salk.* 79; 2 *L. Ray.* 836. Another ground upon which the writ often issued, was, to draw to the court of King's Bench jurisdiction over cases which by law properly belonged to it. And it is mainly upon this latter ground that the power of the Circuit Court to issue the writ in question is now claimed.

It will be seen, from the definition of the writ, and from the uses to which it was principally applied, that it was, generally, if not universally, directed to judicial officers in the exercise of judicial powers or authority. It is clear that the Auditor of Public Accounts is not a judicial officer. Nor can he exercise judicial power or authority. For the Constitution vests the whole judicial power of the State in the Supreme Court, in Circuit Courts, in County Courts, Probate Courts, and in Justices of the Peace. (See *Art.* 6, *Sec.* 1, *Con. Ark.*) Whether or not the Auditor of Public Accounts, in the present instance, has assumed to exercise judicial power or not, we do not deem it necessary to inquire in this investigation. We have already had occasion to analyze and determine the powers and jurisdiction of the several judicial tribunals, as ordained and established by the Constitution. The general doctrine upon that subject will be found fully explained and illustrated in the case of *The State vs. Ashley, and others*, on a motion for an information in the nature of a quo warranto, in *Linton vs. Berry*, and in *Fisher vs. Hall and Childress*, and *Heilman vs. Martin*. The court in delivering the opinion in the case first referred to, says, " in directing the organization of the judicial" department, it was the object of the convention to provide for the whole people of the State, through the several judicial tribunals, a free, ample, speedy, cheap and convenient administration of justice. For which purpose various tribunals, of different grades, were ordained and ordained by the Constitution, and one or more of them established in every township and county in the State; and a jurisdiction was conferred upon each by the Constitution, corresponding in interest and magnitude with their respective grade and dignity; and in such manner, that the whole judicial

63

power of the government became vested in some one or other of these courts." The principle of a separate and distinct jurisdiction pervades and runs through our whole judicial system; and the Constitution has preserved one unbroken and harmonious chain of action through the entire plan. Each separate tribunal is left free in the exercise of its lawful and constitutional authority, and its subordinate parts are only restrained by a superior jurisdiction whenever they transcend the limits of the grant which created them. To assume for any one of these tribunals a jurisdiction greater or less than is conferred by the Constitution, is not only virtually to abrogate and destroy all the distinctions and divisions of separate constitutional jurisdiction between the several respective courts, but it is, in effect, to ordain and establish a wholly different will or rule of action from the one laid down by the convention. The Supreme Court has appellate jurisdiction only, except in cases otherwise provided for by the Constitution. The Circuit Courts have original jurisdiction in all criminal cases not otherwise provided for by law; and *exclusive original* jurisdiction of all crimes, amounting to felony, at common law; and original jurisdiction in all civil cases which are not cognizable before Justices of the Peace, until otherwise directed by the General Assembly; and original jurisdiction in all matters of contract, where the sum in controversy is over one hundred dollars. The Constitution then declares that, " the State shall be divided into convenient circuits, each to consist of not less than five, nor more than seven counties, contiguous to other; for each of which a Judge shall be elected, who, during his continuance in office, shall reside, and be a conservator of the peace within the circuit for which he shall have been elected:" and, " that the Circuit Courts shall exercise a superintending control over the County Courts, and over Justices of the Peace, in each county in their respective circuits; and shall have power to issue all the necessary writs to carry into effect their general and specific powers." (*Sec. 4 and 5 of Art.* 6.) "The Judges of the Circuit Courts may temporarily exchange circuits or hold courts for each other, under such regulations as may be prescribed by law:" and when that is the case each officer must *pro tanto* be considered *Judge*

The Auditor *against* Davies, and others.

of the particular circuit, for the time being, in which and for which he is acting. *Art.* 5, *Sec.* 12, *of the Cons.*

The foregoing clauses of the Constitution have distributed the State into a given number of separate and independent circuits, and they have required and authorized a Judge to be elected and commissioned for each of those circuits, whose power and authority are restricted and limited to the prescribed and ascertained boundaries of his particular district. And the Constitution has, furthermore, established a Circuit Court in each county of the State, and it has fixed and confined its territoritorial jurisdiction within the boundaries thereof; and to the circumference and extent of those limits each Circuit Court has a superintending power and control over County Courts and Justices of the Peace; and is clothed with ample authority to issue all the necessary writs to carry into effect its general and specified powers. But no writ or process, according to the principles of the common law, can run or be executed beyond the limits of the territorial jurisdiction of the court out of which it issues. It is, then, clearly manifest, as there is a circuit court established for each county in the State, that the court of one county cannot run its writs or process within the boundaries or limits of another county, without some legislative provision upon the subject. What class of cases, and for what purposes, the legislature may authorize the Circuit Court of one county to run its writs of process, and have the same executed within the boundaries or limits of another, or of different counties, is a question of some nicety, and we do not take upon ourselves now to determine, as that point is not expressly or legitimately before us. In the present instance, as there is no legislative enactment authorizing the Circuit Court of Chicot county, or the Judge thereof in vacation, to issue the writ in this case to the Auditor of Public Accounts, and as the writ has been run into and executed upon him in the county of Pulaski, we are clearly of the opinion that it has been illegally and improvidently issued; and therefore null and void. Having disposed of this branch of the case, we will next inquire how and in what manner the State can be sued. The Constitution declares " that the Legislature shall, by a vote of both Houses, elect an Auditor of Public Accounts:" and requires him to " keep his office at the seat of government, and to perform such

duties as may be imposed on him by law." *Art.* 5, *Sec.* 21, *of the Cons.* It also gives to the General Assembly " the power to prescribe by law in what court, and in what manner, suit shall be commenced and prosecuted against the State." *Art.* 5, *Sec.* 22.

In obedience to this injunction, the Legislature have declared that " all actions against the State shall be brought in the Circuit Court of the county in which the seat of government is situated, and be against the State by name." " The process, in all actions against the State, shall be a summons, and shall be executed by the officer to whom it may be directed by delivering a copy thereof to the Auditor of Public Accounts." *Rev. Stat.*, *C.* 416, *S.* 1 *and* 2.

The statute gives to the party injured authority to sue the State by name, and it makes it the duty of the Auditor to appear and defend the action whenever process is served upon him; and it expressly declares that, when a suit is instituted against the State, " it shall be brought in the Circuit Court of the county in which the seat of government is situate." A sovereign state or government is incapable of being sued without some legislative provision authorizing such a proceeding; and the statute must be strictly followed.

This court is bound, judicially, to know that the Auditor of Public Accounts keeps his office at the seat of government in the city of Little Rock; consequently, he is beyond the reach of the jurisdiction of any suit brought in the Chicot Circuit Court, or the order of the Judge of that circuit. The present proceeding can be considered in no other light than a suit, to all intents and purposes, instituted against the State. The proceedings possess all the constituent parts of a suit; the *actus reus et judex;* and it is certainly a suit against the State, for the appellees do not seek to make the Auditor personally responsible, but merely to release themselves from a liability as securities on the official bond of the sheriff, which the State holds against them. We have already shown such a suit can only be brought and prosecuted in the Circuit Court of the county in which the seat of government is situated, or in some other court having cognizance in such case over the subject matter in dispute, and whose jurisdiction is co-extensive with the limits of the State. If this position be true, and it seems to us not to admit of a doubt, then it necessarily follows, be-

cause Chicot Circuit Court is not the county in which the seat of government is situated, the Judge thereof had no lawful power or authority to award the writ of certiorari directed to the Auditor of Public Accounts, and thereby take cognizance of the cause and proceed to adjudicate the matter. This being the case, of course all his acts, and those of the Chicot Circuit Court, were *wholly extra-judicial*. The judgment of the court below must therefore be reversed, with costs; and the cause remanded, to be proceeded in agreeably to this opinion here delivered, which is, that the writ of certiorari and supersedeas be dismissed, with costs, by said court for want of jurisdiction to award the same.