McALLISTER *v.* McALLISTER.

4-5850 138 S. W. 2d 1040

Opinion delivered March 25, 1940.

*John Mayes* and *G. T. Sullins,* for appellant.

*Price Dickson,* for appellee.

HOLT, J. Appellants, B. F. McAllister, Carlos Guisinger, Julian Ownbey, are members of the civil service Board of the city of Fayetteville, Arkansas. Appellant, Earl Hand, is acting chief of police and appellant, Clyde Walters, fire chief.

Appellees, A. D. McAllister, J. C. Peal, Witt Carter, J. K. Gregory, B. B. Bronson, George Sanders, H. M. Hosford, Jack Ucker and Earl Shook, are members of the city council of said city, and appellee, J. W. McGehee, city clerk.

On November 8, 1939, appellants filed in the Washington circuit court petition for writ of certiorari, in which they alleged, among other things:

That B. F. McAllister, Carlos Guisinger and Julian Ownbey are members of the civil service board of the city of Fayetteville, Arkansas, having been appointed

by virtue of act 28 of the Arkansas legislature of 1933, the provisions of which have been adopted by the city of Fayetteville, Arkansas.

That on August 7, 1939, the city council of said city enacted ordinance No. 832, which is as follows:

"Whereas, it is necessary to economize on expenditures out of the general fund of the city of Fayetteville, in order to comply with Amendment No. 10 to the Constitution of the State of Arkansas; and whereas, after a careful survey it has been determined that by abolishing the separate offices of chief of police and chief of the fire department and making the mayor of the city of Fayetteville the ex-officio chief of police and chief of the fire department, a material saving will result and the residents of the city of Fayetteville will not suffer as a consequence of such curtailment of expenditures:

"Now, therefore, Be It Ordained by the city council of the city of Fayetteville, Arkansas:

"Section One: The separate offices of chief of police and chief of the fire department of the city of Fayetteville, Arkansas, are hereby abolished and the powers and duties of such officers are hereby vested in the mayor of the city of Fayetteville, Arkansas, who shall hereafter be the ex-officio chief of police and chief of the fire department of the said city of Fayetteville, and the salaries heretofore paid to the chief of police and chief of the fire department of the city of Fayetteville, shall remain in the general fund to be used for such purposes as may be necessary.

"Section Two: All ordinances or parts of ordinances in conflict herewith are hereby repealed, and it appearing that the general fund of the city of Fayetteville is already overdrawn and that a saving must be made immediately in order to comply with Amendment No. 10 to the Constitution of the State of Arkansas, an emergency is hereby declared to exist, and this ordinance shall be in full force and effect from and after its passage, approval and publication.

"Passed and approved this 7th day of August, 1939."

They further alleged that said ordinance is in conflict with the laws and the constitution of the state of Arkansas and is, therefore, void.

They further alleged that on August 7, 1939, said city council attempted to remove the civil service commissioners from office by enacting the following resolution:

"Whereas, the civil service commission of Fayetteville, Arkansas, has failed and refused to designate a chief of police for the police department of the city of Fayetteville, Arkansas, for a period of more than four years, and

"Whereas, the civil service commission of the city of Fayetteville, Arkansas, has failed and refused to properly supervise the fire department of the city of Fayetteville, Arkansas, and as a result the residents of the city of Fayetteville, Arkansas, are threatened with an increase in insurance premium of $11,250 annually, and

"Whereas, B. F. McAllister, one of the commissioners, holds an office under the state law as found by the chancery clerk of Washington county, Arkansas, from the time of his appointment and selection as a civil service commissioner and was ineligible at the time of his selection and has not since been re-elected.

"Now, therefore, Be It Resolved, that Carlos Guisinger, B. F. McAllister, and Julian Ownbey be and they are hereby removed as commissioners of the civil service commission of the city of Fayetteville, Arkansas, for the cause therein stated.

"Be it further resolved that copies of the resolution be forwarded to each of the three commissioners to the end that they may be notifed of their removal from office.

"Passed and approved this 7th day of August, 1939."

They further alleged that said city council is without authority to remove said commissioners except for good cause shown, upon due notice, and proper hearing before said city council, and that said resolution is void

and of no effect and said city council acted without authority and prayed "that the writ of certiorari issue herein, directed to J. W. McGehee, city clerk of the city of Fayetteville, Arkansas, commanding him to produce their books before this court, all records, ordinances, resolutions and proceedings had before the city council in connection with allegations contained in this complaint, and that all said records, ordinances, resolutions, judgments, and proceedings had by said city council with reference to the facts herein alleged be held void and quashed as provided by law, and for all other special and general relief to which they may be entitled and will ever pray."

Appellees in their response to appellants petition for the writ alleged that the ordinance set forth in appellants' petition is purely legislative and not subject to review on writ of certiorari, and that "the resolution discharging members of the civil service commission shows on its face the causes for discharge, and that commissioner, B. F. McAllister, was held ineligible to serve as a member of said commission by the chancery court of Washington county, Arkansas, in a proceeding pending therein wherein B. F. McAllister and others as the board of civil service commissioners was plaintiff and A. D. McAllister, mayor, members of the city council and others were defendants, and that his removal by the city council after the cause for removal had been determined by the chancery court of Washington county was an executive or ministerial act and not subject to review by certiorari.

"Respondents further state that under the terms of § 9945, respondents make the original appointment, but that they do not have the right to make any additional appointments, and that said appointments are filled by the members of the civil service commission and that insofar as the original appointive officers are concerned the offices of the commissioners are perpetual and that no notice is required to remove an officer by the appointive power where the appointive power does not have the right of filling the vacancy.

"That the resolution removing the commissioners, C. W. Guisinger and Julian Ownbey, was a valid exercise of the jurisdiction conferred upon the city council by virtue of § 9945 of Pope's Digest of the Statutes of Arkansas, and that said section does not require notice before removal and that even if said section should be interpreted to require a notice before removal of the commissioners, said commissioners were duly notified by the city council of the city of Fayetteville, Arkansas, to name a chief of police and that said commissioners met in a joint informal session with the city council in which they were requested by the city council to name a chief of police, and that this request was made in the fall of 1937 and again in the fall of 1938, and that they failed and refused to name a chief of police and stated to the city council of the city of Fayetteville, Arkansas, that they did not have any member on the police department whom they felt was qualified to act as chief of police and that notwithstanding their statement they did not have an officer qualified to act as chief of police they named Earl Hand, one of the members of said department, as chief of police at a meeting held on the night following the decision of the chancery court of Washington county, Arkansas, that their failure to name a chief of police was ground for their removal.

"That said commissioners were subject to removal as found in the resolution complained of for the further reason that they failed and refused to take any action in building up the fire department of the city of Fayetteville, Arkansas, after having had brought to their attention the report of the State Rate Bureau naming among other things that the volunteer fire department of the city of Fayetteville be increased as set forth in the report, copy of which is hereto attached, made a part hereof, marked Exhibit "A," and the original being on file in the office of the city clerk of the city of Fayetteville, Arkansas; that they were duly notified of the demands made upon them by the city council of the city of Fayetteville, Arkansas, to the end that the residents of the city might have full police and fire protection and knew further that unless they met said de-

mands they would be removed from office, and that they failed and refused to meet said demands and that if a notice is actually required they have been duly notified.

"Wherefore, respondents pray that the petition for writ of certiorari be denied, and that the action of the council be confirmed and approved in all respects and for all other and further relief."

The trial court, upon a hearing and consideration of appellants' petition and the response of appellees, denied appellants' petition for the writ and from a judgment thereon comes this appeal.

It will be observed that there are two grounds set forth in appellants' petition for the writ, the first is based upon the ordinance enacted by the Fayetteville city council abolishing the offices of the chief of police and chief of the fire department, and the second ground, upon which appellants insist that they are entitled to the writ, being based upon the action of the city council in enacting a resolution removing the commissioners of the civil service board.

It becomes unnecessary here to consider the first ground on which appellants base their right to the writ since they concede that under previous decisions of this court where an act is purely legislative the writ will not lie, and in the instant case they admit that the act of the city council in enacting the ordinance was probably legislative and, therefore, they do not urge that the trial court erred in denying the writ on this ground.

They earnestly insist, however, that they are entitled to the writ on the second ground for the reason that the removal resolution, set out, *supra*, amounted to a judicial or quasi-judicial act by the city council, and was not a legislative, executive, or an administrative act. Should we conclude that this act of the council was purely legislative, then we must affirm the action of the trial court in denying the writ, and all other questions pass out of the case.

The legislature of Arkansas in 1933 passed act 28 (now §§ 9945-64, inclusive, Pope's Digest), directing

cities of the first class to enact proper legislation creating a civil service commission applicable to police and fire departments in such cities. Subsequent to the passage of this general act by the legislature, the city council of the city of Fayetteville, under the mandate thus given, appointed three civil service commissioners.

Having thus appointed these civil service commissioners, the power to remove them is clearly set forth in said act 28 (now § 9945 of Pope's Digest) in the following language:

". . . The city council or the governing body by two-thirds vote may remove any of said civil service commissioners during their terms of office for cause, but the vacancy thereby created shall be filled by the remaining members of the civil service commission. . . ."

We think the meaning here is plain that the city council, by a two-thirds vote, could remove for cause one, or all, of the civil service commissioners by the resolution, *supra,* and that it had the right to determine what would be a sufficient cause, the statute being silent as to the method of removal or the specific cause for which the commissioners may be removed.

Since the act does not require removal to be by ordinance, a resolution of the city council is sufficient. In *Coal District Power Co.* v. *Booneville,* 169 Ark. 1065, 278 S. W. 353, this court said: "Where the law conferring authority on the city council to act does not require same to be exercised by ordinance, it may be exercised by resolution. *Arkadelphia Lumber Co.* v. *Arkadelphia,* 56 Ark. 370, 19 S. W. 1053; *Batesville* v. *Ball,* 100 Ark. 496, 140 S. W. 712, Ann. Cas. 1913C, 1317."

It is our view that when the council enacted this resolution discharging these civil service commissioners, it was acting in a legislative capacity as distinguished from judicial or quasi-judicial.

Certiorari may be defined as follows: "Certiorari, except in so far as it has been enlarged and extended by statute, is a common-law prerogative writ issued from

a superior court directed to one of inferior jurisdiction, commanding the latter to certify and return to the former the record in the particular case." 11 Corpus Juris 87-88.

As to the scope of this writ, in *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041, this court said: "It has been expressly held by this court that the scope of the writ of certiorari at common law is not enlarged by the statutes of this state on that subject. *St. L., I. M. & S. Ry. Co.* v. *Barnes,* 35 Ark. 95; *Merchants & Planters Bank* v. *Fitzgerald,* 61 Ark. 605, 33 S. W. 1064; *Pine Bluff Water & Light Co.* v. *City of Pine Bluff,* 62 Ark. 196, 35 S. W. 227." (See §§ 2865-66 of Pope's Digest).

In *Pine Bluff Water & Light Co.* v. *City of Pine Ry. Co.* v. *Barnes,* 35 Ark. 95; *Merchants' & Planters' Bluff, supra,* this court said: "At common law, the writ lies only to review the judicial action of inferior courts, or of public officers or bodies. When the action of the officers or public bodies is purely legislative, executive, and administrative, although it involves the exercise of discretion, it is not reviewable on certiorari. But it is not essential that the officers or bodies to whom it lies shall constitute a court, or that their proceedings, to be reviewable by the writ, should be strictly and technically 'judicial,' in the sense that word is used when applied to courts. It is sufficient if they are what is termed 'quasi-judicial.' "

And in *State ex. rel.* v. *Railroad Commission of Arkansas,* 109 Ark. 100, 158 S. W. 1076, it was also said: "The test, therefore, is whether the act sought to be reviewed is done in a judicial or quasi-judicial capacity, and not merely in a legislative, executive, or administrative capacity."

Section 2865 of Pope's Digest confers power upon circuit courts to "issue writs of certiorari to any officer or board of officers, city or town council, . . . to correct any erroneous or void proceeding or ordinance, and to hear and determine the same."

Section 2866 provides that affidavits may be read on such applications, and evidence *dehors* the record introduced, but "The record of any such inferior judicial

tribunal shall be conclusive as far as the same may extend.''

If records of a judicial tribunal are conclusive, then certainly records of a legislative body would be conclusive, and on application for certiorari evidence not appearing in the record would be inadmissible. The record in this case is the resolution, and on its face it is regular. Certiorari, being a writ of discretion, may be denied by the court to which application is made where the law does not expressly or by clear implication direct that it shall be issued.

No error appearing, the judgment is affirmed.