The Honorable Donald R. HUFFMAN *v.*
ARKANSAS JUDICIAL DISIPLINE
and DISABILITY COMMISSION

00-1018                                    42 S.W.3d 386

Supreme Court of Arkansas
Opinion delivered March 22, 2001

*Appellant*, pro se.

*Mark Pryor*, Att'y Gen., by: *Colette D. Honorable*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Judge Donald R. Huffman petitions for a writ of certiorari seeking to have this court review the record of the action taken against him by the Arkansas Judicial Discipline and Disability Commission ("the Commission") in admonishing him for violating Canons 2A and 3E(1) of the Arkansas Code of Judicial Conduct. Judge Huffman also alleges that the presence of the executive director of the Commission, as well as an attorney and investigator for the Commission, in the deliberations of the Commission following the probable-cause meeting denied him an impartial tribunal.

We hold that the conduct of Judge Huffman in this case violates Canons 2A and 3E(1). As to the allegations of an impartial tribunal, although the presence of the executive director of the Commission, as well as an attorney and investigator for the Commission, in the Commissioners' deliberations is improper when the Commission is considering the disposition of the pending complaint, the record does not reflect that the non-Commission members were present during the Commissioners' deliberations, and this alleged misconduct can not be reviewed by this court on a petition for a writ of certiorari. We deny the petition.

*Facts*

On September 15, 1999, attorneys for Wal-Mart Stores, Inc., filed a petition in Benton County Chancery Court for a temporary restraining order ("TRO") prohibiting the United Food & Commercial Workers International Union ("the Union") from trespassing in Wal-Mart stores nationwide. The case was assigned to Judge Oliver Adams. However, Judge Adams was ill and not in the courthouse. Judge Huffman was present, and the petition was presented to him for his consideration. Upon seeing that the petition involved Wal-Mart, Judge Huffman tried to find another judge to review the

petition because he and his wife held a significant amount of Wal-Mart stock. He had recused in two previous Wal-Mart cases when the parties did not waive his disqualification. Judge Huffman contacted Judge Jay Finch's chambers because he was the only other chancellor present in the courthouse. Judge Finch was on the bench hearing juvenile matters at the time, and the person who answered the phone was unwilling to disturb Judge Finch. Being unable to locate an immediately available chancellor, and because the matter requested a TRO, which is a matter Judge Huffman believed required immediate attention, he reviewed the pleadings and granted the TRO on exchange.

Subsequently, the Union filed a motion in federal district court to transfer the case to that jurisdiction. The motion was denied by the federal court and upon its return to Benton County Chancery Court, it came to Judge Huffman's attention that the Union's attorneys in the federal pleadings asserted Wal-Mart had sought a TRO from "a state judge they knew to be infected with massive, fatal, and disqualifying prejudice in favor of Wal-Mart and against Defendants...." The Union filed a motion requesting that Judge Huffman recuse. Judge Huffman sent a letter to his fellow trial judges requesting they refer any request for an order in the case to him. This was apparently done to insure the appearance of the Union attorneys before him before he recused. Judge Huffman recused when the defendant made its first appearance at a hearing on defendant's motion to recuse on November 23, 1999. The order of recusal was dated December 7, 1999.

This matter came to the attention of the Commission when its executive director, James A. Badami, saw a September 24, 1999, article in the *Arkansas Times* indicating Judge Huffman had issued the order. The article quoted Judge Huffman who, when asked if an objection was raised about his Wal-Mart stock ownership, stated, "I would recuse like I did last time." Based upon this article, Director Badami opened a complaint file on the matter himself and commenced an investigation. Based upon his initial investigation, Director Badami decided there was sufficient cause to proceed to a probable-cause determination under Rule 9 of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission. Judge Huffman was given an opportunity to respond, and a probable-cause determination meeting was held on July 21, 2000. Based on the evidence, the Commission concluded Judge Huffman violated Judicial Canons 2A and 3E(1), and he was admonished by the Commission pursuant to Rule 9E(2).

## Writ of Certiorari

Certiorari is an original writ issuing from a superior to an inferior tribunal requiring the inferior tribunal to forward the record of a proceeding to the superior tribunal for consideration there. *Auditor v. Davies*, 2 Ark. 494 (1840). In 1940, this court stated:

> Certiorari may be defined as follows: "Certiorari, except in so far as it has been enlarged and extended by statute, is a common-law prerogative writ issued from a superior court directed to one of inferior jurisdiction, commanding the latter to certify and return to the former the record in the particular case." 11 Corpus Juris 87-88.

*McAllister v. McAllister*, 200 Ark. 171, 138 S.W.2d 1040 (1940); *see also, Auditor v. Davies*, 2 Ark. 494 (1840). The review available under certiorari is thus limited to errors appearing on the face of the record. *Hanley v. Arkansas State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998); *Hardin v. Norsworthy*, 204 Ark. 943, 165 S.W.2d 609 (1942). Matters not contained in the record are simply not subject to appellate review. *Smith v. Smith*, 337 Ark. 583, 990 S.W.2d 550 (1999). Further, a writ of certiorari is not a writ of right but a writ of discretion. *Ricci v. Poole*, 253 Ark. 324, 485 S.W.2d 728 (1972); *Hill v. Taylor*, 199 Ark. 695, 135 S.W.2d 825 (1940).

Because the writ of certiorari is a common-law writ, the right to it exists without being provided for by statute. The writ, however, may be modified by statute. *McAllister, supra.* Rule 12F specifically provides for review of any action taken by the Commission by a petition for a writ of certiorari. Because the writ is provided by rule, and would have been available in its common-law form without such provision, the issue of whether the writ is modified thereby must be considered.

Courts construe their own rules using the same means as are used to construe statutes. *Gannett River Pub. v. Arkansas Dis. & Disab.*, 304 Ark. 244, 801 S.W.2d 292 (1990). The fundamental principle used in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning. *Boston v. State*, 331 Ark. 99, 952 S.W.2d 671 (1997); *Rush v. State*, 324 Ark. 147, 919 S.W.2d 933 (1996); *Munson v. State,* 331 Ark. 41, 959 S.W.2d 391 (1998).

The phrase "review of any action taken" could be argued to be broader than the typical common-law writ, which is restricted to errors appearing on the face of the record. However, by definition, a petition for a writ of certiorari only brings the record up for review, and thus review is restricted to the record. The subject phrase then means that any action taken which appears on the record may be reviewed.

■ This petition for a writ of certiorari is the proper procedure in this case. In *Duty v. Arkansas Judicial Discipline & Disability Comm'n,* 304 Ark. 294, 801 S.W.2d 46 (1990), this court, after referring to Rule 12F, stated, "[T]here is no provision in the rules for appeal other than by a judge who was made a respondent before the commission." Appeal in *Duty, supra,* applies to Rule 12 A-E review by this court following a Rule 11 Formal Disciplinary Hearing. Review otherwise is by petition for a writ of certiorari under Rule 12F. Because the disposition of Judge Huffman's case was under Rule 9 after a probable-cause meeting, he has properly sought relief in this matter by a petition for a writ of certiorari pursuant to Rule 12F.

*Presence of Non-Commission Members in Deliberations*

■■ The record in this matter makes no mention whatever of the presence of the executive director of the Commission, as well as an attorney and investigator for the Commission, in the Commission deliberations. As discussed above, only matters appearing on the record may be reviewed by this court. In *Smith, supra*, this court noted that even though in a custody proceeding both parties identified the father in oral argument, it amounted to no more than a stipulation or consent to the court's jurisdiction and, as such, did not rise to evidence that could be considered by this court. So it is in this case where both parties in their briefs appear to agree that the executive director of the Commission, as well as an attorney and investigator for the Commission, were present in Commission deliberations. The presence of non-Commission individuals who exercise quasi-prosecutorial duties before the Commission in Commission deliberations after a probable-cause meeting where the Commission is deciding the disposition of the complaint and the case is improper. However, based upon the record in this case, the issue can not be reached. Had Judge Huffman sought relief from the Commission when he discovered this had occurred, that would likely be reflected in the record, and could then be considered by this court.

*Impartiality of the Judiciary*

Judge Huffman's main argument in his petition is that his and his wife's economic interest in Wal-Mart was *de minimis* as it relates to the total outstanding shares of stock of Wal-Mart, and the Huffmans' *de minimis* economic interest could not be substantially affected by this proceeding. Thus, Judge Huffman argues that he was not required to recuse pursuant to Canon 3E(1)(c).

Canon 3E(1)(c) and Canon 3E(1)(d)(iii) provides:

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

\* \* \*

(c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

\* \* \*

(iii) is known by the judge to have a more than a de minimis interest that could be substantially affected by the proceeding....

Economic interest and *de minimis* are defined in the terminology section of the Canons:

"De minimis" denotes an insignificant interest that could not raise reasonable question as to a judge's impartiality. See Sections 3E(1)(c) and 3E(1)(d).

"Economic interest" denotes ownership of a more than de minimis legal or equitable interest, or a relationship as officer,

director, advisor or other active participant in the affairs of a party, except that:

(i) ownership of an interest in a mutual or common investment fund that holds securities is not an economic interest in such securities unless the judge participates in the management of the fund or a proceeding pending or impending before the judge could substantially affect the value of the interest;

(ii) service by a judge as an officer, director, advisor or other active participant in an educational, religious, charitable, fraternal or civic organization, or service by a judge's spouse, parent or child as an officer, director, advisor or other active participant in any organization does not create an economic interest in securities held by that organization;

(iii) a deposit in a financial institution, the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association or of a member in a credit union, or a similar proprietary interest, is not an economic interest in the organization unless a proceeding pending or impending before the judge could substantially affect the value of the interest;

(iv) ownership of government securities is not an economic interest in the issuer unless a proceeding pending or impending before the judge could substantially affect the value of the securities.

See Sections 3E(1)(c) and 3E(2).

Judge Huffman and his wife hold approximately 12,000 shares of Wal-Mart stock worth about $700,000. None of the exceptions in subparagraphs (i) through (iv) apply to this interest. Therefore this stock ownership constitutes an economic interest in a party to the proceeding. Additionally, Judge Huffman's wife's ownership of the stock constitutes an additional reason he might need to disqualify himself. Under Canon 3E(1)(d)(iii), a judge must consider any economic interest his or her spouse may have in the subject matter of the proceeding or in a party to the proceeding. Judge Huffman acknowledges the economic interest in this case, but asserts it fails to meet the definition of *de minimis* and, therefore, he need not have disqualified on this basis.

While there is little doubt that the action taken by Judge Huffman was unlikely to fundamentally affect the value of his and

his wife's stock, which comprises but a minuscule percent of the total stock existing in Wal–Mart, this analysis on the *de minimis* value of an economic interest mentioned in Canon 3E(1)(c) ignores the more basic issue of appearance of impropriety and impartiality raised by Canon 2A and 3E(1), and this issue must be addressed first. Canon 2A states as follows:

> *Canon 2. A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.*
>
> A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Canon 3E(1) states as follows:

> *Canon 3. A judge shall perform the duties of judicial office impartially and diligently.*
>
> \* \* \*
>
> E. *Disqualification*
> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned....

Both Canons 2A and 3E(1) require a judge to protect the integrity and impartiality of the judiciary. In Canon 2A, a judge must consider whether any act he or she takes promotes public confidence in the integrity and impartiality of the judiciary. Similarly, Canon 3E(1) requires a judge to recuse when his or her impartiality might reasonably be questioned.

An independent judiciary is essential for our society. The judiciary cannot function without the trust and confidence of the public in the integrity and independence of its judges. Violations of the Arkansas Code of Judicial Conduct cause the public to lose confidence and trust in the judiciary.

The commentary to a statute is not controlling over the statute's clear language, but is a highly persuasive aid to construing that statute. *McGrew v. State*, 338 Ark. 30, 991 S.W.2d 588 (1999). The same is true with respect to the judicial canons. The commentary to Canon 2A provides in part as follows:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

\* \* \*

The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.

The commentary to Canon 3E(1) provides:

Under this rule a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in section 3E(1) apply....

A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification.

In a case where a judge and his or her spouse have an economic interest in a party litigant, the first question the judge should consider is whether that economic interest would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. The judge should disclose on the record the judge's and his or her spouse's economic interest in the party litigant. If the answer to the question is "yes," the judge should recuse, and one need not consider whether the economic interest in the party litigant was *de minimis* or not.

Here the question is whether agreeing to preside over a case, at least to the extent of reviewing and granting a restraining order in favor of Wal-Mart while holding approximately 12,000 shares of Wal-Mart stock worth about $700,000 in that company, would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired. It must be noted and considered as well that Judge Huffman sent out a letter asking the other judges in the judicial district not to sign an order in the case, but to have the

par ies contact him as he felt he needed to have a hearing in the cas . Also, Judge Huffman recused twice before in cases involving Wal-Mart when he was requested to recuse. The commentary to Rule 3E(1) provides what a judge should do when he or she has an economic interest in one of the parties. "A judge should disclose on he record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification." If Judge Huffman's economic interest in Wal-Mart would create in reasonable minds a preception that the judge's ability to carry out the judicial responsibilities in a case involving Wal-Mart with integrity, impartiality, and competence is impaired, then it does not matter that Judge Huffman's economic interest in Wal-Mart is *de minimis* to the extent that his economic interest could not be substantially affected by this proceeding. In the present case, Judge Huffman recognized his stock ownership posed such a possible concern, as is indicated by his attempt to have Judge Finch review the petition. His concern should have been heightened under these facts because in seeking the TRO, only counsel for Wal-Mart was present.

Judge Huffman cites the commentary to Canon 3E(1), which provides that the rule of necessity might override the rule of disqualification. An example given is when a judge is the only judge available and there is a matter requiring immediate attention such as a temporary restraining order. While the facts of this case are somewhat similar, there is no showing of necessity. As Judge Huffman states, Judge Finch was in the courthouse. Judge Finch was on the bench, but no reason is given why the litigants could not be sent to his chambers to wait for him to take a recess or otherwise become available. Further, even assuming Judge Finch was unavailable, no reason is shown as to why the petition could not wait until another judge could be found.

Judge Huffman cites Rule 9B of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission, which he asserts provides that no action should be taken by the Commission in the absence of fraud, corrupt motive, or bad faith. Although no such allegations were made, Judge Huffman misreads Rule 9B. It simply provides that no action is to be taken by the Commission for good-faith decisions on findings of fact and conclusions or applications of law because such matters are reviewed by appeal of the case before the judge. Thus, Rule 9B is not relevant here.

Judge Huffman also cites as support Canon 3F, which provides:

> A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

Judge Huffman has followed this procedure in the past. The problem with this procedure in this case is that an *ex parte* temporary order that substantially affects the rights of the defendant has already been issued. The procedure set out in Canon 3F was not followed when he issued the *ex parte* order. If Judge Huffman violated the Arkansas Code of Judicial Conduct in entering the *ex parte* TRO, that violation cannot be corrected by having a subsequent hearing pursuant to Canon 3F.

██ We hold this conduct would create in reasonable minds the perception that Judge Huffman's ability to carry out judicial responsibilities with integrity, impartiality, and competence was impaired. Although Judge Huffman argues his interest was *de minimis* and his involvement could not impact the value of the stock, which may be true, it does nothing to counter the court's holding. The proceedings before the Arkansas Judicial Discipline and Disability Commission are not erroneous on the face of the record.

Petition denied.

ARNOLD, C.J., not participating.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting in part. I write to point out that the judicial canons this court has adopted regarding disqualification by a judge when he or she possesses a *financial interest* in the subject matter in controversy are confusing. The 1990 Judicial Code provided in relevant part, under Canon 3C (1) and (2), the following:

C. DISQUALIFICATION

(1)   A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to, instances where:

* * *

(d) he or his spouse . . .

(iii) is known by the judge to have an *interest that could be substantially affected* by the outcome of the proceeding;

* * *

(2)   A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household. (Emphasis added.)

Under Canon 3C(3)(c), the 1990 Judicial Code *defined "financial interest"* as meaning ownership of a legal or equitable interest, *however small.* (Emphasis added.) When using language such as that found in Canon 3C(3)(c), other jurisdictions have held that a judge's ownership of even a single share of stock, worth only a few dollars, would disqualify the judge, even if the litigation would have no effect on the stock's value. *See* Marvin Comisky & Phillip C. Patterson, *The Judiciary — Selection, Compensation, Ethics, and Discipline* § 4.2 (1987); *In re Cement Antitrust Litigation,* 688 F.2d 1297 (9th Cir. 1982) (judge required to disqualify by reason of wife's $29.20 stock interest in 7 out of 200,000 class members in antitrust litigation).

By per curiam order issued on July 5, 1993, *In the matter of the Arkansas Code of Judicial Conduct,* 313 Ark. 735, 753-754 (1993), this court removed the "however small" language found in the 1990 Code. The 1993 Amended Code added a "Terminology" section which defined "economic interest" as denoting, in pertinent part, [the] ownership of a more than *de minimis* legal or equitable interest . . . except that:

(i) ownership of an interest in a mutual or common investment that holds securities is not an economic interest in such securities unless the judge participates in the management of the fund or a proceeding pending or impending before the judge could substantially affect the value of the interest;

*Id.* at 739. The 1993 Code defined "*de minimis*" as an insignificant interest that could not raise reasonable question as to a judge's impartiality under Sections 3E(1)(c) and 3E(1)(d) (previously 3C(1)(c) and (d) in the 1990 Judicial Code).

In sum, by the amended 1993 Code, our court vacated the "however small" language as well as the idea that a judge must disqualify if he or she owned even one share of stock regardless of how small its value. Instead, this court's amended version places the emphasis on *whether the judge knows he or she has more than a de minimus interest that could be substantially affected by the proceeding.* Courts using this test have declined to require disqualification when the judge's financial interest will not be affected by the outcome of the proceeding. *See* Marvin Comisky & Phillip C. Patterson, *The Judiciary — Selection, Compensation, Ethics, and Discipline* § 4.2 (1987) (citing *In re Virginia Electric & Power Co.*, 539 F.2d 357 (4th Cir. 1976)); *cf. New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir. 1980). *See also* Jeffrey M. Shaman *et al.*, *Judicial Conduct and Ethics* § 4.20 (3d ed. 2000).

In the instant case, the majority court concludes that there is little doubt that Judge Donald R. Huffman's action in the Wal-Mart Stores, Inc. case against the United Ford & Commercial Workers International Union would not affect the value of his and his wife's Wal-Mart stock. This being so, Code section E(1)(d)(iii) would seem to read in Judge Huffman's favor and not require his recusal. Nonetheless, the majority court looks to another section of the Code, Canon 2A, which generally requires a judge to be impartial and diligent when performing his or her judicial duties. While Canon 2A is certainly a rule all judges should know and comply with as they perform all judicial duties, Canon 2A offers no specific language which addresses the disqualification issue that confronted Judge Huffman. The canons are simply confusing when dealing with the financial interest issue a judge must consider and weigh when deciding whether to disqualify. Although Canon 3E(1)'s wording is unclear, the *commentary* to it is helpful and the majority opinion seizes upon those comments to uphold the decision of the Arkansas Judicial Discipline and Disability Commission. That commentary reads as follows:

> Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, *regardless whether any of the specific rules in Section 3E(1) apply.*

\* \* \*

> *A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification.* (Emphasis added.)

After reciting the foregoing provisions, the majority opinion fashions the following rule:

> In a case where a judge and his or her spouse have an economic interest in a party litigant, the first question the judge should consider is whether that interest would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired. The judge should disclose on the record the judge's and his or her spouse's economic interest in the party litigant. If the answer to the question is "yes," the judge should recuse, and one need not consider whether the economic interest in the party was *de minimis* or not.

Again, what makes this case troublesome to me is the majority court's conclusion that Judge Huffman's and his wife's financial interests in Wal-Mart were *not fundamentally affected* by his judicial action; yet the Canons, as discussed above, establish the standard that a judge should disqualify if his or her *interest could be substantially affected* by the proceeding conducted by the judge. The majority court's decision seems to make the "substantially affected" language in Canon 3E(1)(d)(iii) of no import.

To add to the confusion, the Judicial Ethics Advisory Committee issued an advisory opinion, No. 94-08, which dealt with whether a justice was required to recuse where AT&T Corporation or its subsidiary had an appeal pending before the supreme court. The justice had an interest in about 1,000 shares of an equity income fund, 18% of which was invested in AT&T. The advisory opinion said that AT&T had outstanding shares of over one billion, three hundred million shares, and found:

> Your relatively small share of this fund's relatively small investment in AT&T Corporation clearly meets the "*de minimis*" test. It would take quite a stretch of the imagination to think that your decision concerning the franchise tax or fee in an Arkansas city *could affect the value of the stock of AT&T and consequently the value of this fund.* (Emphasis added.)

The advisory opinion ended, stating:

The issue is whether your impartiality might reasonably be questioned because you have an economic interest in the subject matter in controversy *or in a party to the proceeding or have any other interest more than de minimis that could be affected by the proceeding.* Judges need to consider seriously the issues concerning disqualification but they also have an obligation to be available to handle the caseload before them. In this instance, the facts as outlined should not require your disqualification. (Emphasis added.)

In conclusion, I agree with the majority's opinion wherein this court holds for the first time that a judge in Judge Huffman's circumstances should disclose on the record, his or her financial interest in a party litigant when that litigant is a party before the judge. Moreover, I would add that, if an opposing party presents a reasonable objection,[1] concerning that financial interest, to the judge's further participation and the judge rules adversely, an appeal from that adverse ruling should be subject to appeal. *See* Ark. R. Sup. Ct. 1-2(a)(6); *cf.* Ark. R. App. P.—Civ. 2(a)(8).

Until today's decision, the Judicial Code required a judge's financial interest in a party litigant would have to be substantially affected to require recusal. Thus, I would hold Judge Huffman's action in this cause was not misconduct, since this court is of the opinion that his action was not shown to have substantially affected his financial interest in Wal-Mart.

---

[1] Such an appeal must comply with the terms set out in Rule 11 of the Rules of Appellate Procedure—Civil.