**Carl S. THOMAS, Plaintiff-Appellant,**

v.

**Sanford KADISH, et al.,
Defendants-Appellees.**

No. 83–2582.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1984.

---

procedures, as well as various California parties, primarily academics and administrators of the law school in California from which Thomas received his law degree. Federal jurisdiction was based upon 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

The district court sustained motions to dismiss the suit. The court found that it lacked subject matter jurisdiction over the claims asserted against the Texas defendants, arising out of the bar admission procedures, and that it lacked personal jurisdiction over the California defendants. We affirm.

Carl S. Thomas, pro se.

Alice Giessel, Henry P. Giessel, Houston, Tex., for Dr. George Parker.

Baker & Botts, Susan E. Roehm, Houston, Tex., for Kadish et al.

Jim Mattox, Atty. Gen., Michael Patterson, Asst. Atty. Gen., Austin, Tex., for other interested parties.

Ryan & Marshall, Steven Gonzalez, Houston, Tex., for Dr. Richard Coons, M.D.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Thomas was denied admission to the Texas bar because of his alleged emotional and mental unfitness. Thomas filed this complaint in federal district court for injunctive and other relief, alleging deprivation under color of state law of various federal constitutional rights (principally by reason of racial and religious discrimination). Made defendants are various Texas parties involved in the Texas bar admission

## I.

The principal issue posed by Thomas' appeal relates to the district court's holding that it lacked subject matter jurisdiction over this § 1983 complaint, which stemmed from the denial of his admission to the Texas bar.

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that a federal district court lacks subject matter jurisdiction to review a state court's allegedly unconstitutional denial of admission to the bar. The basic reason was that the state court action was characterized as judicial in nature, and final state court judgments may be reviewed only by the Supreme Court itself. 28 U.S.C. § 1257. 460 U.S. at 483, 103 S.Ct. at 1315.[1] In *Feldman*, the Court also indicated that a federal district court lacks jurisdiction to review constitutional claims that "are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar," *id.* at n. 16, and that a failure of a plaintiff to secure a final state-court judgment "may forfeit his

---

1. However, in *Feldman* the Court also held that a federal district court does have jurisdiction to entertain a general attack on the constitutionality of a bar admissions rule itself. Since "state supreme courts may act in a non-judicial capacity in promulgating rules regulating the bar," 460 U.S. at 485, 103 S.Ct. at 1316, therefore a district court is "not reviewing a state court judicial decision," 460 U.S. at 486, 103 S.Ct. at 1317, when it entertains "a general challenge to the constitutionality" of a bar admissions rule, *id.* Here, Thomas has not mounted a general attack upon the constitutionality of any rule of the Texas bar admission procedures.

right to obtain review of the state court decision in any federal court," *id.*

On the basis of *Feldman*, the present district court held it lacked subject matter jurisdiction of the claims against the Texas defendants.

The plaintiff Thomas persuasively argues, however, that *Feldman* does not apply to the present facts. They concern, he contends, administrative action by the Texas state Board of Law Examiners and that, to obtain federal review of this unconstitutional administrative action, he was not required to exhaust the interminable process of state review procedures. *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). As will be seen from our discussion below of the present facts and of the state of Texas state bar admission procedures, this contention is substantial.

Nevertheless, we ultimately conclude that Thomas' contention must be rejected, in the light of the weight given by the Court to the values applicable to state bar admission procedures noted in *Feldman, supra,* that arise out of federal-state comity considerations and the "strength of the state interest in regulating the state bar," 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16.

## II.

Thomas, who is black, attended law school at the University of California at Berkeley ("Berkeley") from August, 1977 until May, 1980, receiving his law degree therefrom in 1981. While at Berkeley, Thomas became embroiled in disputes with his fellow students and with the faculty at that law school. Believing that he was a victim of racial and religious discrimination (Thomas was a fervent, if not fanatical, Christian activist), he filed suit in California state court against several law professors and the university regents.

When he applied in 1981 to take the Texas state bar examination, Thomas was required by the Texas Board of Law Examiners to obtain certification from the dean at Berkeley attesting to Thomas' completion of legal studies and to his good moral character and emotional fitness. The Berkeley law school did certify to Thomas' successful completion of his law degree graduation requirements. However, an associate dean replied to Thomas that the school was not in a position to furnish him the certificate of moral character or fitness, but that, upon request from the Texas state bar, it would furnish the student's record concerning the matter to that bar "for it to make its own inquiry and assessment."

When the Board of Bar Examiners subsequently wrote to the Berkeley associate dean in connection with its investigation of Thomas' "good moral character and emotional fitness," the Berkeley academic reported to the Texas Board about the law suit and also about an incident involving complaints from a number of Thomas' fellow students of his alleged harassment of them, including Thomas' denial of the charges and his request (later withdrawn by him) to confront his accusers in a quasi-official setting. The dean's letter stated that "the school made no independent investigation, [although] the complaints seemed quite serious to those who received them," and that "[i]n the end nothing of any official nature came of the matter so far as we are concerned."

Upon receipt of this information, the Texas Board informed Thomas that further investigation of his character and fitness was necessary before final approval could be given him.[2] The Board subsequently informed Thomas that, reviewing the pleadings and correspondence, it felt that there was good cause to believe that a professional evaluation of his mental and emotional health was appropriate in order to assist the Board in assessing his "fitness,"

---

**2.** Nevertheless, the Board conditionally admitted his bar application (Thomas took the July, 1981 bar examination, but the results were sealed), pending final approval as to his moral character and fitness.

and that it would arrange for psychological testing and psychiatric evaluation at the Board's expense by clinical psychologists and a psychiatrist.[3]

Thomas agreed to the examinations. These board-selected specialists examined Thomas and found that he had serious emotional problems. The Board scheduled a hearing, at which Thomas appeared pro se (waiving his right to have counsel present). Following the hearing, the Board denied Thomas' application for admission to the bar of Texas on its finding that he suffered then "from a paranoid psychotic condition," which was likely to prevent him from properly discharging his responsibilities as a member of the legal profession if he were licensed to practice law.

The Board took this action at its meeting on January 22, 1982, formally informing Thomas to that effect in writing. Although (as he had been informed) Thomas had the right under Texas bar admission procedures to appeal the Board's decision to a state district court (*see* III *infra*), instead on March 25, 1982, he filed his present civil rights complaint against the Texas and California defendants, pertinently alleging as to the latter that they had conspired with the Texas defendants to deprive him unconstitutionally of his right to take the Texas state bar examination.

### III.

As earlier noted, Thomas' principal contention is that the federal district court has subject matter jurisdiction of his complaint of constitutional deprivation, 42 U.S.C. §§ 1983, 1985, because the denial of his admission to the Texas court was the result of an *administrative* decision of the Texas state Board of Law Examiners, not of a final *judicial* decision by a state court that,

under *Feldman, see* I *supra,* is not reviewable by a federal district court.

We must examine this contention in the light of the Texas state bar admission regulation and procedure. These are stated at Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1984) arts. 304, 305, 305a, 306 (hereinafter, "Art. ——"), and in the *Rules Governing Admission to the Bar of Texas Adopted by the Supreme Court of Texas,* effective August 1, 1981 (hereinafter, "Admission Rules").[4] The procedural scheme therein set forth is as follows, insofar as relevant to the present issues:

The Supreme Court of Texas is authorized to make rules to govern eligibility to take the bar examination. Art. 306(a). It is also authorized to make rules to govern the administration of the Board of Law Examiners in its functions relating to the licensing of lawyers. Art. 306(b). The Board of Law Examiners was legislatively created and consists of nine lawyers appointed by the Supreme Court. Art. 304.

The Board, "acting under instructions of the Supreme Court ..., shall pass upon the eligibility of all candidates for examination for license to practice law within this State," and it "shall not recommend any person for license to practice law unless such person shall show the Board in the manner to be prescribed by the Supreme Court, that he is of such moral character and of such capacity and attainment that it would be proper for him to be licensed." Art. 305(a). In addition, the Board "may conduct an investigation of the moral character and fitness of an applicant for a license," art. 305a(a), but it may not recommend the denial of a license to an applicant on the ground of a deficiency in his "fitness" unless "the Board finds a clear and rational connection between the applicant's present mental and emotional condition and

---

3. "Fitness" refers to Thomas' emotional and mental health. *See* III *infra.* Thomas, who had been president of his university's student body as an undergraduate, apparently satisfied the Board as to his "good moral character" by letters of recommendation from academics, ministers, and members of the Texas bar.

4. The 1981 Admission Rules were introduced in the record, with the uncontested statement that, with regard to the rules presently at issue, they are substantially unchanged from the prior version in effect when Thomas applied for admission. They are unchanged in the present text of the Admission Rules, which includes amendments to November 1, 1983.

the likelihood that the applicant will not discharge properly" his responsibilities as a lawyer if licensed. Art. 305a(c)(2). Admissions Rule II(c) provides: "Fitness, as used in these rules, is the assessment of mental and emotional health as it affects competence of a prospective lawyer."

The Admissions Rules further provide: The application to take the bar examination "shall be made on a form to be furnished by the Board and calling for information reasonably related to a thorough inquiry into the good moral character, fitness, and legal education of the applicant." Rule VI(b). The Board is granted "wide discretion to use additional means and ascertain or require additional data in order to satisfy itself" that the applicant has the desired qualifications. Rule VI(f). No applicant shall be entitled to take the bar examination until the Board determines "that the applicant possesses good moral character and fitness." Rule VI(e).

Admission Rule XI provides for hearings before the Board if it "is not satisfied that an applicant possesses the necessary good moral character and fitness." The rule provides for reasonable notice, *id.* (a), and that the Board or other opponent of approval has the burden of going forward with evidence that the applicant is not of good moral character or fitness, *id.* (b). The rule further provides that the applicant be given the opportunity to be present in person and by attorney present evidence, to cross-examine adverse witnesses, and to present argument to the Board on the issues of law or fact, *id.* (d), as well as that upon request the applicant prior to the hearing is entitled to a written statement of the specific nature of the unfavorable information to be presented against him, *id.* (g). On the basis of the evidence and argument at the hearing, the Board shall determine whether the applicant possesses good moral character and fitness, *id.* (h), and shall notify him in writing of the evidence relied upon and the reasons for denying the application, *id.* (i).

If the Board denies admission to the applicant on the ground of his moral character or (as here) fitness, the applicant may obtain judicial review by filing suit in a specified district court within sixty days of the date of the Board's written decision. Admission Rule XI(k).[5] The district court's review is limited to whether the Board's decision is reasonably supported by substantial evidence. Admission Rule XI(1). An appeal from any final judgment of that district court may be taken "in the manner provided for in civil actions generally," Admission Rule XI(1),[6] which in Texas would constitute appeal of right to the state intermediate court, then further review by the Texas Supreme Court, usually through application for discretionary certiorari as to the intermediate court's decision.

## IV.

From this description of Texas bar admission regulations and procedures, it can be seen that the Board's denial of eligibility to take the bar examination or for admission to the bar is subject to judicial review (as provided by Texas supreme court, under its rule-making powers with regard to

**5.** Admission Rule XI(k) reads:

Proceedings for review of any decision of the Board may be instituted within sixty (60) days of the date of the written decision by filing a petition against the Board, as defendant, in a district court of Travis County and not elsewhere. The petition for review shall be served on the Executive Director of the Board. After service of such petition, and within the time permitted for filing an answer, the Board shall certify to the district court in which such petition is filed the record of the proceedings to which the petition refers.

**6.** Rule XI(1) reads:

The review of such decision of the Board, shall be tried by the court without a jury. The burden of proof shall be on the plaintiff and the court shall determine from the Board's record of the proceeding filed with it whether or not the Board's decision is reasonably supported by substantial evidence. The reviewing court may affirm the action complained of or remand the matter to the Board for further proceedings. Appeals from any final judgment of the court may be taken by either party in the manner provided for in civil actions generally, but no appeal bond shall be required of the Board.

eligibility to take the bar examination or to be admitted to the Texas bar). It can also be seen that the Board of Law Examiners, although created by the Texas legislature, is appointed by the Texas supreme court and acts under that court's instructions in administering the rules promulgated by that court, and that the Board is governed in the administration of its functions by rules adopted by the Texas supreme court.

Thomas points out, however, that in effect the Board's denial of his emotional fitness to practice law is not a judicial action by any state court and, pragmatically, is not susceptible of state court review. Thomas does not attack the general constitutional validity of the rule providing for judicial review of the Board's denial of his mental fitness to practice law. Nevertheless, the lengthy process of securing a final state-court judgment that reviews the Board's denial—which envisions state district court trial, intermediate state court appeal, and state supreme court certiorari review—augurs much-belated and possibly ineffective relief to a recent law-school graduate ultimately held to have been improperly denied a certificate of fitness that would have made him eligible to take a bar examination soon after he had completed his legal studies and received his law degree.[7]

Thomas therefore argues that the federal court has jurisdiction at least to hear and determine his complaint that the *Board*, not any *court*, denied him admission to the Texas bar, not because of his alleged mental condition, but rather because of his behavioral characteristics and beliefs that arose from his religious fervency and his racial background. He argues that the same values that do not require exhaustion of state remedies before resort to a federal tribunal for relief from federal constitu-

tional deprivation by a state administrative body—to provide immediate access to federal courts, notwithstanding failure to exhaust (often ineffective) remedies purported to be supplied by state law provisions, *Patsy v. Board of Regents, supra,* 457 U.S. 496, 102 S.Ct. at 2561–63—militate in favor of his contention that the Board's denial of his fitness be regarded as an administrative determination subject to immediate review by the federal district court, with regard to his claims of deprivation of federal constitutional rights, without requiring him first to exhaust the inadequate and prolonged review of this administrative action required by state law.

Thomas' contentions have force. Nevertheless, ultimately, we conclude that the Supreme Court, in *Feldman,* discussed in I *supra,* has provided the governing values and rationale that we must apply to determining whether a federal district court has subject-matter jurisdiction to consider constitutional claims that "are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar." 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16. These controlling values include federal-state comity considerations and the "strength of the state interest in regulating the state bar." *Id.*

In the present case unlike in *Feldman,* as Thomas argues, the denial of admission is by a state board, not by the court itself. However, the state board is appointed by the state supreme court and acts under its directions and administers rules, procedures, and standards for admission to the state bar provided by that court. In denying Thomas admission, the Board was exercising authority on behalf of the supreme court pursuant to that court's rules, stan-

---

**7.** In Thomas' case, of course, the Board commendably alleviated some of the hardship implicated by the administrative review of his mental fitness: it permitted him to take the 1981 bar examination, although the results were sealed pending final approval of the qualification. The Board's regulations apparently do not bar Thomas from re-applying for admission and, if any prior mental condition has now been cured,

now receiving final approval of his mental fitness.

In his pro se brief and oral argument before this court, Thomas made a professionally competent and effective argument. It may well be that he is now recovered from the mentally disturbed condition earlier opined by the examining doctors.

dards, and procedures. Thus, as was said with regard to a bar disciplinary committee acting under authority of the state high court, the function of the present Board of Law Examiners "may be analogized to the function of a special master" in taking actions of an "essentially judicial nature." *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 434 n. 13, 102 S.Ct. 2515, 2533 n. 13, 73 L.Ed.2d 116 (1982).[8]

Further, the Texas state supreme court has itself provided for a method of judicial review of the Board's denial of fitness. A rejected applicant's deliberate bypass of those procedures that envisioned (ultimately) a reviewable final state-court judgment, itself under *Feldman* not subject to federal district-court review, should not, it would seem, entitle the applicant to a review of his constitutional claims by a federal district court that would have been unavailable to him if he had pursued his claim to final state court judgment. Under *Feldman*, "a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims," 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16, and "[b]y failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court," *id.*

We therefore affirm the dismissal by the district court of the Texas defendants for lack of subject-matter jurisdiction.

## V.

■ The district court dismissed the California defendants[9] for lack of personal jurisdiction. By his appellate brief, Thomas narrows the basis of his claim against them to that they "conspired to create a

record against him while he was in California that would disqualify plaintiff from practicing law" in Texas and also joined in a conspiracy with the Texas defendants in order "to force plaintiff to drop his California suit" against them. Reply Brief, pp. 11–12.

■ Without detailed explication of the factual allegations and showing, we will simply state that neither the present conclusory allegations of conspiracy by the California defendants based upon their acts in California, nor the alleged effects of this conspiracy in Texas, show a claim of sufficient minimum contacts with Texas that would support personal jurisdiction of Texas courts against these defendants for their acts in California. *Helicopteros Nacionales de Columbia, S.A. v. Hull*, ── U.S. ──, ──, 104 S.Ct. 1868, 1872–74, 80 L.Ed.2d 404 (1984); *Kulko v. Superior Court of California*, 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 250–54, 78 S.Ct. 1228, 1238–40, 2 L.Ed.2d 1283 (1958); *Burstein v. State Bar of California*, 693 F.2d 511, 520–23 (5th Cir.1982); *Burnett v. Short*, 441 F.2d 405, 406 (5th Cir.1971) (a § 1985 conspiracy complaint dismissed for failure to state a claim because "the complaint is devoid of any factual allegations which, taken to be true, would support the requisite element of conspiracy by the defendants"). Insofar as Thomas bases Texas personal jurisdiction upon a letter (not claimed by Thomas to be defamatory) sent to the Texas state bar by the California associate dean, that letter was written by the dean in response to a request from the Texas state bar initiated by Thomas himself. "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the fo-

---

8. Under Texas law, "a tribunal which is not empowered to render a final judgment is not functioning in a judicial capacity." *United Services Life Insurance Company v. Delaney*, 396 S.W.2d 855, 861 (Tex.1965). We need not consider, however, whether the Board was empowered to render a final judgment and so was acting in a "judicial capacity" under Texas law, for "it is a question of federal law whether 'a

particular proceeding before another tribunal [is] truly judicial' for purposes of ascertaining the jurisdiction of a federal court." *Feldman, supra*, 103 S.Ct., at 1311 n. 13.

9. They were various professors, administrators, and students associated with Thomas' attendance at the California law school.

rum state." *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1239–40.

The district court therefore correctly granted the California defendants' motion to dismiss the complaint against them for lack of personal jurisdiction.

### Conclusion

For the reasons set forth, we AFFIRM the district court judgment that dismissed the plaintiff Thomas' suit.

AFFIRMED.