Arlene **NORDGREN**, Plaintiff-Appellant,

v.

Jerome **HAFTER**, et al.,
Defendants-Appellees.

No. 85–4642

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 12, 1986.

---

Arlene Nordgren, pro se.

Edwin Lloyd Pittman, Atty. Gen., Stephen J. Kirchmayr, Jr., Jackson, Miss., for Hafter & Easterling.

Before POLITZ, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

In this appeal the Court is presented with a constitutional challenge involving as its central theme the Mississippi Bar admissions requirement that applicants for the Mississippi bar examination be graduates of American Bar Association accredited law schools absent certain statutory exceptions. We find that the district court, 616 F.Supp. 742, properly granted summary judgment in favor of appellees as to appellant's claims, and we affirm.

## I.

In the fall of 1983, the Mississippi Board of Bar Admissions (the Board) denied appellant Arlene Nordgren's bar exam application because she had graduated from a non-ABA accredited law school located in California. Nordgren reapplied to the Board for admission to the February 1984 bar exam on the ground that she satisfied what she alleged to be Mississippi's alternative admissions requirement, which involves an integrated, six-year course of legal study. The Board again denied Nordgren's application on February 27, 1984.

Subsequently, Nordgren brought this 42 U.S.C. § 1983 *pro se* action challenging the constitutionality of that portion of the related Mississippi bar admission rules which exempts from the ABA accreditation and written exam requirements graduates from non-ABA accredited Mississippi law schools but *not* graduates from non-ABA accredited out-of-state law schools. In addition to her constitutional claims for which she sought declaratory and injunctive relief plus compensatory and punitive damages, appellant sought recovery under antitrust and state law claims.

Following the district court's grant of summary judgment to the appellees, Nordgren timely appealed to this Court.

## II.

A. Because federal trial courts and Courts of Appeal possess no power to sit in review of state court decisions, the district court in this case properly examined its subject matter jurisdiction under *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Finding that the Board was an arm of the Mississippi Supreme Court and that its actions were judicial in nature, the district court concluded that no jurisdictional foundation supported appellant's claims arising from the Board's denial of her application. Nordgren challenges this holding on the ground that the Board's action was not a "judicial proceeding". She raises related arguments, but they involve meritless contentions concerning Article III power, abstention, diversity, pendent and "1983" jurisdiction.

In determining that the bar proceeding in this case was of a judicial nature, the district court, under the holding in *Feldman,* was not required to find evidence of the formal trappings normally associated with judicial proceedings. Rather, the district court properly examined whether Nordgren asserted a claim of right and whether the admissions board exercised court-delegated, judicial power by applying Mississippi admissions rules as to her individually. This Court found such a "judicial proceeding" analogue in *Thomas v. Kadish,* 748 F.2d 276 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985), where the Texas bar admissions board applied its admissions criteria in denying Thomas admission on mental fitness grounds.

In this case the Board applied its bar admissions criteria when it denied Nordgren's application on educational "fitness" grounds. Like the Texas Board in *Thomas,* the Mississippi Board exercised admissions power on behalf of the state supreme court, and it did so under rules which were subject to that court's approval. Miss. Code Ann. § 73–3–2(1) & (3). Furthermore,

the Mississippi Board's fitness determinations are subject to judicial review.

Like the waiver proceedings in *Feldman*, the Board's actions here may not have been cast in the common mold of judicial proceedings, but they were sufficient for the district court to conclude correctly that the Board acted in a judicial capacity within the meaning of *Feldman* (*see Thomas*, 748 F.2d at 281 & n. 8) when it denied Nordgren's application. Nordgren's quest for review of the specific action as to her own application, therefore, was beyond the district court's subject matter jurisdiction. Otherwise we would be undertaking to review a state judicial decision.

■ B. The district court next went on to reach Nordgren's general constitutional challenges to the Mississippi Bar rules and statutes. Although, as mentioned above, federal courts do "not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional", *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1317, they do "have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." *Id.*

Appellees agree that the district court properly recognized jurisdiction over Nordgren's "general constitutional challenges". But even a general attack upon the bar admission rules can implicate subject matter jurisdiction. It, therefore, requires this Court's examination to see if appellant is making such a general attack. *See, e.g., Giannakos v. M/V BRAVO TRADER*, 762 F.2d 1295, 1297 (5th Cir.1985).

Our jurisdictional scrutiny on this issue must be conducted by examining if Nordgren presented to the district court a general constitutional challenge to the bar admission rules which was not "inextricably intertwined" with the Board's denial of her own application. *Feldman*, 460 U.S. at 483 n. 16, 486–487, 103 S.Ct. at 1316 n. 16, 1316–1317.

The distinction "between general challenges to state bar rules as promulgated and challenges to [what amounts to] state court decisions in particular cases ... is often difficult to draw." *Razatos v. Colorado Supreme Court*, 746 F.2d 1429, 1433 (10th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Rogers v. Supreme Court of Virginia*, 590 F.Supp. 102, 104–108 (E.D.Va.1984). This Court recently applied the distinction in *Thomas*, where the plaintiff mounted no general attack upon the constitutionality of any rule of the Texas bar admission procedures, 748 F.2d at 277 n. 1, but did allege that his constitutional rights were deprived when the Texas Board, in applying state bar rules, denied his bar application on mental incompetency grounds. Citing *Feldman*, we held that since Thomas could have sought review of his constitutional claims in the Texas courts, no federal subject matter jurisdiction supported them. 748 F.2d at 281–282. *Compare Howell v. State Bar of Texas*, 710 F.2d 1075, 1077 (5th Cir.1983) (*Feldman* did not preclude general constitutional challenges to a state's disciplinary scheme applicable to attorneys), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984), *cited in Hefner v. Alexander*, 779 F.2d 277, 282 (5 Cir.1985); *Rogers*, 590 F.Supp. at 106 (no subject matter jurisdiction where plaintiff complains only that her particular constitutional rights were violated by state supreme court).

■ The record reveals that appellant mounts several "general constitutional challenges" which support subject matter jurisdiction within the meaning of *Feldman*. Feldman, for example, contended that a District of Columbia bar rule was unconstitutional because, *inter alia*, it created an irrebutable presumption that only accredited law school graduates are fit to practice law. It was held that the district court had jurisdiction to hear this claim because it did not require review of the judicial decision of the District of Columbia as it related specifically to Feldman's situa-

tion; it only had to review the rule as promulgated.[1]

In the case before us, the appellees do not urge that Nordgren should have appealed the Board's action through the Mississippi courts, raising her general constitutional challenges there. This affirmative defense was available to appellees but was not asserted by them. It was, therefore, waived. *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 507 n. 10 (5th Cir.1980); *see also, Carbonnell v. Louisiana Dept. of Health & Human Resources*, 772 F.2d 185 (5th Cir.1985). Furthermore, this waiver does not implicate our subject matter jurisdiction since a general constitutional attack is within our jurisdiction. *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1316.

### III.

A. Appellant's constitutional argument is largely focused on an equal protection of the laws claim grounded upon the fact that the Mississippi bar admits for examination the graduates of certain unaccredited Mississippi law schools but does not admit the graduates of unaccredited *out-of-state* law schools.

Nordgren's constitutional claim leads us to a review of Mississippi bar admission statutes and rules. The bar admission statutory scheme, made effective in 1979, and amended in 1983 to remove residency requirements, requires that bar applicants must be graduates of an ABA-approved law school. Miss. Code Ann. § 73–3–2(2)(a) (1985 supp.). One of the exceptions, however, makes eligible for bar admission those who were enrolled in a law school in Mississippi, whether or not ABA accredited, on November 1, 1981, who also graduated before November 1984. *Id.*

■ Nordgren has stated a colorable equal protection claim, *see Pappanastos v. Board of Trustees, Etc.*, 615 F.2d 219 (5th Cir.1980); *compare Attwell v. Nichols*, 608 F.2d 228, 231 (5th Cir.1979) (per curiam), *cert. denied*, 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980). But she is a white Jewish female who challenges a classification which is not based upon racial, religious, gender, or other suspect classifications or fundamental rights. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *Pappanastos*, 615 F.2d at 221; *Moore v. Supreme Court of South Carolina*, 447 F.Supp. 527, 528 (D.S.C.1977), *aff'd*, 577 F.2d 735 (4th Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978).[2] The district court also correctly concluded that appellant cannot successfully assert standing on behalf of aggrieved black applicants to the Mississippi bar. She is not their representative. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 482, 102 S.Ct. 752, 764, 70 L.Ed.2d 700 (1982); *see also Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049, 1051 n. 1 (5th Cir.1984).

Because there was nothing suspect about the class appellant undertook to represent, the district court needed to discern only a rational basis in the legislative classification[3] challenged here, *Cline v. Supreme*

---

**1.** The Supreme Court did note, however, that even a general constitutional challenge to a statute or rule might be barred by res judicata-collateral estoppel principles, since it may be found that an aggrieved bar applicant reasonably could have raised such claim before the state tribunals. 460 U.S. at 487–489, 103 S.Ct. at 1318; *see also, Korup v. Flaherty*, 524 F.Supp. 1160, 1163–1166 (E.D.Pa.1981).

**2.** We recognize that in *Supreme Court of New Hampshire v. Piper*, — U.S. —, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985), the United States Supreme Court spoke of an individual's opportunity to practice law as a "fundamental right," 105

S.Ct. at 1277. *Piper* is distinguishable on a number of grounds, not the least of which is the fact that "it involved only the Article Four 'Privileges and Immunities' Clause, U.S. Const. art. IV, § 2, not the Equal Protection Clause...." *Lupert v. California State Bar*, 761 F.2d 1325, 1327 n. 2 (9th Cir.1985). But this general statement cannot take precedence over the many cases which recognize the right of a state to establish high standards for admission to the bar.

**3.** Whether the Mississippi Supreme Court views legislative enactments concerning admission to the state bar as governmental power exercised in aid of that court and thus subject to the

*Court of Georgia,* 781 F.2d 1541, 1543 (11th Cir., 1986). The presumption is in favor of constitutionality. *Town of Ball,* 746 F.2d at 1058. In general the Supreme Court has exhibited extreme deference to legislative classifications in actions challenging regulation of licensed professions. *Lupert,* 761 F.2d at 1328 (and cases cited). This Court need only inquire whether any state of facts reasonably may justify the distinctions embodied in Mississippi's admissions criteria. *Pappanastos,* 615 F.2d at 221.

The "grandfather clauses" are distinctions which serve a legitimate state interest. Indeed, it has been held that where a state upgrades professional license requirements, due process may *require* a "grandfather provision". *Berger v. Board of Psychologist Examiners,* 521 F.2d 1056, 1063 (D.C.Cir.1975). In upgrading the bar admission requirements in issue, the Mississippi legislature simply sought to avoid unduly prejudicing those applicants who relied on the pre-1979 statutory avenues for bar admission. Mississippi follows a common pattern in making such provision. *See Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174, 1184 (D.Nev.1980). Sections 73–3–2(2)(a), (b), and (4) represent a transitional stage for bar admissions within the state, and these exceptions all "expired" in November 1984. Further, since the 1983 amendment deleting the residency requirement, these exceptions have been open to persons from *any state,* although it is true that the Mississippi law school exception limited non-residential protection only to those who attended the local unaccredited school.

Nordgren's basic argument is that since her California law school program was the equivalent of the statute's Mississippi law

court's objection, or as an infringement on the court's powers, *see e.g., Goldsmith v. Pringle,* 399 F.Supp. 620, 626–627 (D.Colo.1975) (three-judge court), calls for no variation in analysis. "The manner in which a state chooses to separate and delegate governmental power under state law is ordinarily not a matter of concern under the U.S. Constitution." *Shelton v. City of College Station,* 780 F.2d 475 (5th Cir.1986) (en banc).

school exception, her right to equal protection under the laws was violated. The district court concluded that the "legislature could reasonably have relied on its own knowledge, combined with that of the Board . . . and the [state] Supreme Court, in determining . . . the quality of the legal education offered by the Mississippi College School of Law, formerly known as Jackson School of Law." *See also Shenfield v. Prather,* 387 F.Supp. 676, 686 (N.D. Miss.1974) (three-judge court) (legislature had a reasonable basis for exempting University of Mississippi law graduates from bar exam requirement); *Huffman v. Montana Supreme Court,* 372 F.Supp. 1175 (D.Mont.1974) (Montana law exempting only state law school graduates from taking the bar exam is reasonable and therefore constitutional), *aff'd, mem.,* 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974).

Were this Court to accept Nordgren's argument, the Mississippi legislature would be compelled to study and "provisionally accredit" every non-Mississippi, non-ABA accredited law school which spawns a Mississippi-bound graduate. The Constitution does not demand this much, especially where the challenged provision was of limited duration. *Goldsmith v. Pringle,* 399 F.Supp. 620, 625 (D.Colo.1975) (three-judge court); *cf., Sestric v. Clark,* 765 F.2d 655, 664 (7th Cir.1985) ("[t]he less serious a discrimination is, the less ought to be required to justify it."), *cert. denied,* —— U.S. ——, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986). The state is only required to abstain from arbitrarily or irrationally waiving its admission requirements. *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981); *Louis,* 490 F.Supp. at 1182. There is here no arbitrary or irrational exception.[4]

4. Appellant points to two individual cases where the Mississippi bar allegedly permitted at least one non-ABA accredited law school graduate to take the Mississippi bar exam. Neither in her motion for summary judgment nor in her "Rebuttal to Defendants (sic) Answer Filed 2/19/85", however, does she develop this claim. It thus was not adequately presented to the district court. The record sources to which she cites this Court contain vague conclusory state-

In support of Mississippi's rational and proper concern is the fact that the state of California, where Nordgren graduated, "reminds" students of unaccredited law school stature. *See Lupert*, 761 F.2d at 1328 (9th Cir.1985), holding that no equal protection violation was established because California requires that first-year students of unaccredited law schools pass an examination before receiving credit for further study. No such requirement is made as to students of accredited law schools. Nordgren does not claim that she relied on Mississippi's exception clauses when she attended her law school. She concedes that her Mississippi bar application coincided with her husband's military transfer to that state in 1983 from California. She, therefore, hardly presents a compelling case against a rule which excludes *all* unaccredited law school graduates except a limited "reliance" class, which itself is an exemption that otherwise imposes no residence requirement. *See also Louis, supra*, 490 F.Supp. at 1184 ("one who attends an unaccredited law school knowing it may preclude her admission to practice in the state of her choice cannot complain when she is excluded from practice for that reason.") (citation omitted).

■ B. Nordgren also challenges the bar admission statute's "law clerkship" exception to the ABA accreditation and bar exam requirement. This exception extends to those who, before July 1, 1979, began a general course of study of law under the supervision of a Mississippi attorney and who completed, by November 1, 1984, the course of study required by other statutory provisions. § 73–3–2(2)(b). This claim is controlled by the analysis set out above. It is also well known that several states maintain bar eligibility achieved by office law study which takes place within the state.

The remainder of appellant's equal protection claims are attenuated and are without merit.

### IV.

Nordgren asserts a due process claim based upon her interpretation of § 73–3–2(2)(c) as it exists in the form of Mississippi Supreme Court Rule V as compared to its provisions in its pre-1983 versions. This statutory subsection requires that both ABA-accredited school applicants and alternative, "reliance-class" applicants are required to satisfy certain undergraduate educational requirements. They must show that they have received: (1) "a bachelor's degree from an accredited college or university"; or (2) "credit for the first three years of college work from a college or university offering an integrated six-year prelaw and law course, and ha[ve] completed [their] law course at a college or university offering such an integrated six-year course." § 73–3–2(2)(c). This undergraduate education provision itself contained an exception for "applicants who have already begun the general course of study of law as of November 1, 1979, either in a law school or under the supervision of a Mississippi lawyer...." § 73–3–2(2)(c). These applicants needed only submit proof of two years of college study. *Id.*

Nordgren argues that *after* her first bar application but *before* the Board denied it, the statute and the rule based upon it were amended to make clear that the change instituted more stringent undergraduate educational requirements for bar admission. Then she asserts that prior to this clarifying amendment in 1983, this provision should have been read to act as no more than an alternative, all-encompassing, "reliance-class" prerequisite, so that mere fulfillment of these requirements alone would gain ones eligibility for admission to the bar regardless of the fact that a law school was out of state and unaccredited. Thus, she claims that the later statutory amendment, which made it clear that this was only an additional undergraduate edu-

---

ments and are insufficient for the purpose of preventing summary judgment for the appellees. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986). Accordingly this claim, if it was meant to be a claim, is waived. *Emory v. Texas State Board of Medical Examiners*, 748 F.2d 1023, 1027 n. * (5th Cir.1984).

cational requirement, violated her right to due process.

We find that the district court correctly concluded that Nordgren's factual assertion is wrong. Subsection (c), since *1979*, had contained the words stating that the undergraduate requirements were "in addition to" the ABA-accreditation or alternative law requirements. The 1983 amendment only deleted the residency requirement. The court also properly found that the statute was not unconstitutionally vague.

■ As to the state supreme court's Rule V on bar admission, the district court properly concluded that notwithstanding the fact that it lacked the words "in addition to", the rule in substance repeated § 73–3–2(2)(c). The rule was clear enough to inform a reasonable person that at the very least this provision could not authorize an alternative bar admission. As the court noted, Nordgren's construction of the rule's requirements is illogical.

## CONCLUSION

We do not enumerate other contentions of appellant which we have considered and found unpersuasive. We find that there exists " 'no genuine issue as to any material fact and [appellees are] entitled to judgment as a matter of law.' " Fed.R.Civ.P. 56(c); *Fontenot*, 780 F.2d at 1194. We find no error in the judgment of the district court.

AFFIRMED.