**Edward G. PARTIN II, Plaintiff,**

v.

**ARKANSAS STATE BOARD OF LAW EXAMINERS and Chris Thomas in his individual capacity, Defendants.**

**No. LR–C–94–255.**

United States District Court, E.D. Arkansas, Little Rock Division.

Oct. 11, 1994.

Edward G. Partin, II, pro se.

Regina Haralson and Philip Kaplan of Kaplan, Brewer, and Maxey, Little Rock, AR, for defendants.

## ORDER

WILSON, District Judge.

Defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The Court dismisses the portion of the complaint seeking an injunction, on the grounds that the state's proceedings are judicial in nature and hence cannot be reviewed by a federal district court. Regarding the portion of the complaint seeking damages for constitutional violations, the Court grants the motion to dismiss under the doctrine of abstention. The motion to dismiss will be granted in its entirety, for the reasons stated below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Edward G. Partin II, admitted in an application for admission to the Bar of Arkansas that he had been arrested for possession of marijuana in 1973 as well as for growing marijuana in 1984 and 1986. At a later hearing in November, 1993 before defendant Chris Thomas, Director of the State Board of Law Examiners, plaintiff admitted that he was convicted in 1974 for possession of Dilaudid. On February 9, 1993, plaintiff had completed law school and signed an acknowledgment stating that he would be allowed to take the February Bar examination, but "in accord with Rule 13 of the Rules Governing Admission to the Bar, the Arkansas Board of Law Examiners is continuing to investigate my qualifications for certification." Mr. Partin circled "moral character" on the form as the subject of the inquiry. The form indicated that plaintiff understood that the Board "reserved the right to withhold certification of my application for admission to the Bar of Arkansas." Mr. Partin passed the Bar exam.

Because of plaintiff's three felony arrests, Defendant Chris Thomas, the Director of the State Board of Law Examiners, referred Mr. Partin's application to the Chairperson of the Board. The Chairperson was unable to decide the issue, and pursuant to the Arkansas Rules Governing Admission to the Bar, Rule XIII, the plaintiff was advised by letter of his right to request a hearing, and that a bond would be required to conduct the hearing. Plaintiff failed to appear at a first hearing scheduled in September, 1993, but after the minimum bond was set at $250, plaintiff arrived with that amount in October at the Director's office and requested another hearing. The new Chairperson of the Board appointed another three-member hearing panel and another hearing was conducted on Nov. 20, 1993. Mr. Partin appeared and answered questions from the panel and an evidence officer. Plaintiff admitted that he was deeply involved with drugs in the 1970s, and had marijuana possession convictions in the 1980s. He received four years probation for an arrest in 1984, and his 1986 marijuana conviction led to revocation of his previous probation. A record of the hearing was sent

to all eleven members of the Board. The full Board voted eight to three that Mr. Partin should be ineligible for admission to the Bar. The Board submitted findings of fact and conclusions, several of which dealt with plaintiff's felony arrests and convictions.

The Board mailed as well as hand-delivered its findings to the plaintiff. Plaintiff was notified in writing on April 18, 1994, that his application for admission to the Arkansas Bar was denied by the Arkansas Board of Law Examiners. On April 19, 1994, Mr. Partin filed a Notice of Appeal to the Arkansas Supreme Court, alleging that the Board of Law Examiners was clearly in error in deciding that plaintiff lacked the moral character to be admitted to the Arkansas Bar. Plaintiff alleged in the Notice of Appeal to the Supreme Court that he had been denied due process and equal process under the Fourteenth Amendment to the United States Constitution and Article II, Section 8 of the Arkansas Constitution. That case is currently pending in the Arkansas Supreme Court.

On April 25, 1994, plaintiff filed this lawsuit against the Board of Law Examiners and Mr. Thomas in his individual capacity. Mr. Partin requested an injunction requiring the Board to certify him; he also seeks damages against the Director for alleged violation of constitutional rights. Plaintiff seeks relief in this Court for the same claims raised and pending before the Supreme Court of Arkansas.

## LEGAL ISSUES

■ The U.S. Supreme Court held in *District of Columbia v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) that a federal district court lacks subject matter jurisdiction to review a state court's allegedly unconstitutional denial of admission to the bar. The Court reasoned that the state court action was judicial in nature, and final state court judgments may be reviewed only by the U.S. Supreme Court itself. *Feldman*, at 483 n. 16, 103 S.Ct. at 1316 n. 16; 28 U.S.C. 1257. In the case at bar, Mr. Partin has been denied admission to the Bar by the Arkansas Board of Law Examiners, and the Arkansas Supreme Court has not yet ruled; but courts have also determined that such an exercise of a state board of law examiners' authority is fundamentally judicial in nature. In *Thomas v. Kadish*, 748 F.2d 276 (5th Cir.1984), the plaintiff was denied admission to the Texas bar by the Texas Board of Law Examiners, and not by a court. Plaintiff then filed suit in federal district court, alleging deprivation of constitutional rights because of racial and religious discrimination. *Id.* The Board denied the plaintiff admission in *Thomas* because of alleged mental and emotional unfitness. *Id.* at 277. The Court ruled that in denying the plaintiff admission, the Board "was exercising authority on behalf of the [Texas] Supreme Court pursuant to that Court's rules, standards, and procedures. Thus, as was said with regard to a bar disciplinary committee acting under authority of the state high court, the function of the present Board of Law Examiners 'may be analogized to the function of a special master' in taking actions of an 'essentially judicial nature.'" *Thomas*, supra, citing *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 434 n. 13, 102 S.Ct. 2515, 2552 n. 13, 73 L.Ed.2d 116 (1982).

In *Muhammed v. Arkansas Supreme Court Committee on Professional Conduct*, 655 F.Supp. 584 (E.D., Ark.1986), the plaintiff alleged that the Supreme Court Committee on Professional Conduct had suspended him from practicing law because of racial and religious discrimination. Judge Eisele ruled that in *Thomas* the Court found that the Board's decision "should be considered a state judicial decision, and that under federal/state comity and *Feldman*, only higher state courts, and ultimately the United States Supreme Court, had authority to review the Board's decision." *Muhammed*, at 585. The *Muhammed* Court cited the principles of *Feldman* and *Thomas* to treat the decision of the Supreme Court Committee on Professional Conduct as a judicial decision. *Id.* at 586. In the instant case, Mr. Partin has properly sought review of the Board of Law Examiners' decision in the Supreme Court of Arkansas. This Court lacks the authority to review the Board's judicial decision.

■ In addition, Mr. Partin alleges state and federal constitutional violations. Plaintiff argues that the application process deprived him of his equal protection rights. Mr. Partin has failed to provide any factual foundation for his allegation that he was denied equal protection of the law. Beyond conclusory allegations that defendants violated the Equal Protection Clause, plaintiff has cited no facts to support the contention that he was treated differently from any other applicant similarly situated. In *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), the State Primary Canvassing Board in Illinois had refused to certify the plaintiff as a candidate for the General Assembly as required by a state statute, and plaintiff had subsequently alleged that the state violated his equal protection rights by this refusal. Justice Stone held for the Supreme Court that in the absence of any factual foundation tending to show that the Board made an intentional or purposeful discrimination between persons or classes, there was no violation of the right to equal protection of the laws secured by the Fourteenth Amendment. *Snowden*, supra, at 7–8, 64 S.Ct. at 400–01; *see also Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). Plaintiff has failed to state an equal protection claim upon which relief can be granted, and pursuant to Rule 12(b)(6), plaintiff's claim on equal protection grounds is dismissed.

Plaintiff misstated the facts in his contention that the Director applied rules "that were nonexistent." The Arkansas Supreme Court by per curiam opinion amended its rules in January, 1994, but rules governing admission to the Bar were in place when plaintiff applied in November, 1992. Those rules in effect at that time provided for notice, hearing, and written findings. Mr. Partin signed an acknowledgment, noted above, indicating that he understood the Board reserved the right to proceed "in accord with Rule 13 of the Rules Governing Admission to the Bar of Arkansas." The Director sent plaintiff a copy of Rule XIII explaining the procedures that would be followed. The plaintiff has not presented any evidence that he was treated any differently from other applicants. Defendants point out that other applicants have been denied admission to the Bar for lack of moral character. Plaintiff erroneously states that "Arkansas has never refused an initial applicant admission based on moral character." (Plaintiff's reply to defendants' reply to plaintiff's response to defendants' motion to dismiss, at 2). In *In re Crossley*, 310 Ark. 435, 839 S.W.2d 1 (1992), an applicant who had a history of drug abuse was denied admission by the Board because of deficient "moral character."

■ Plaintiff also alleges that his constitutional rights to due process of law were violated. The Court's analysis of this claim differs from the other parts of plaintiff's argument, for it is clear that federal courts have jurisdiction to hear federal constitutional challenges that state a claim. Regarding this allegation, the question is whether this Court should exercise its jurisdiction to vindicate alleged violations of constitutional rights, or whether it should abstain and defer to the state judicial process. Under the doctrine of abstention there are some cases in which federal courts decline to exercise jurisdiction. *County of Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). This case falls under the type of abstention summarized in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which holds that a federal court will abstain when a similar action is pending in state court and an important state interest is involved. As discussed above, there is a pending state proceeding in which the constitutional claims in the case at bar have been raised. *Younger* abstention originally applied to a case holding that a federal court should not enjoin a pending state criminal proceeding except when necessary to prevent great and immediate irreparable injury; *Younger* was based upon concerns for comity and federalism. *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The Supreme Court subsequently held that such concerns are equally applicable to state proceedings that are "judicial in nature, in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff will have a full and fair opportunity to litigate his constitutional

claim." *Id.; Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). There are three crucial questions that must be determined in deciding whether to apply *Younger* abstention: "(1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224 (2nd Cir.1987).

Defendants correctly state that *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) is on point. In *Middlesex,* a member of the New Jersey Bar was charged by the local Ethics Committee—which acted "as the arm of the Court" in this capacity—with violations of the Disciplinary Rules of the Code of Professional Responsibility. *Id.,* at 428, 433, 102 S.Ct. at 2519, 2522. The attorney then filed suit in U.S. District Court, contending that the disciplinary rules violated his constitutional rights. The District Court dismissed the complaint on the basis of *Younger* abstention principles. The Third Circuit Court of Appeals reversed, rejecting the application of *Younger* abstention to this case, but the U.S. Supreme Court reversed the Third Circuit and held that the principles of *Younger* did apply. *Id.* at 423–424, 102 S.Ct. at 2516–17. The Court in *Middlesex* emphasized that *Younger* and its progeny espouse a strong federal policy against federal-court interference "with pending state judicial proceedings absent extraordinary circumstances." *Id.* at 431, 102 S.Ct. at 2521. The Supreme Court stressed that the concept of comity includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*

In *Middlesex,* the Court made clear that *Younger* is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex,* citing *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Justice Burger ruled that the state of New Jersey had "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Id.* at 435, 99 S.Ct. at 2383. The importance of the state interest in the pending state judicial proceedings called *Younger* abstention into play, and so long as the constitutional claims of the attorney could be determined in the state proceedings and there was "no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex,* supra, 457 U.S. at 435, 102 S.Ct. at 2523.

In applying these principles to the case at bar, it is clear that Arkansas also has "an extremely important interest" in regulating bar admission and maintaining and assuring the integrity of the Arkansas Bar. Amendment 28 to the Arkansas Constitution provides that "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." The Arkansas Supreme Court has observed that "The state constitution places the duty and responsibility upon this court to determine who shall be licensed to practice law." *In re Anderson,* 312 Ark. 447, 455, 851 S.W.2d 408, 412 (1993). The purpose of Amendment 28 "was to protect the public and to maintain the integrity of the courts and the honor of the profession .... It is the responsibility of this court to see that the public can maintain that trust in the Bar." *Anderson,* at 452, 851 S.W.2d 408. The Arkansas Board of Law Examiners was created by the Arkansas Supreme Court and given the duty to review applicants to the Bar and determine their eligibility. The state's interest in this case is heightened by the reality that the same claim has been appealed to the Arkansas Supreme Court and is now pending.

The next requirement in *Middlesex* and related cases provides that there must be an adequate opportunity in the state proceedings to raise the federal constitutional challenges. *Middlesex,* supra, 457 U.S. at 432–435, 102 S.Ct. at 2521–23. The Director's

decision regarding Mr. Partin was reviewed by the Chairman of the Board, and the Chairman's decision was reviewed by the 11 Board members, and now plaintiff has sought and secured review by the appeal to the Supreme Court of Arkansas. In Mr. Partin's appeal to the Arkansas Supreme Court he has addressed the same constitutional issues that he alleged in the case at bar. The Arkansas Supreme Court is perfectly competent to address these constitutional challenges to its procedures; as the United States Supreme Court ruled in *Middlesex,* "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Id.* at 431, 102 S.Ct. at 2521.

The last issue in the *Middlesex* line of cases involves a determination of whether there is any showing of "bad faith, harassment, or some other extraordinary circumstance" that would make abstention inappropriate in the instant case. *Id.* at 435, 102 S.Ct. at 2523. There has been no showing of any extraordinary circumstances in Mr. Partin's case, and hence abstention is appropriate. The importance of the state interest in the pending state judicial proceeding, the opportunity to raise the federal constitutional challenges before the Arkansas Supreme Court, and the lack of extraordinary circumstances require abstention. The motion to dismiss is granted.

Finally, plaintiff cites *Taylor v. Kentucky State Bar Association,* 424 F.2d 478 (6th Cir.1970) in an effort to contend that abstention is not proper. The circumstances in *Taylor* and the issues were quite different from the case at bar. Daniel T. Taylor, III was a lawyer who had pursued a career in the defense of unpopular causes and controversial clients, including civil liberties organizations, civil rights activists, the poor, and the disadvantaged. *Taylor,* at 479. The Kentucky Bar Association filed a charge against Taylor seeking to have him disbarred. Taylor's complaint in federal district court involved several key issues that differed from Mr. Partin's: Taylor contended that the Bar Association's actions "were instituted in bad faith, with no real hope of

ultimate success; that said proceedings are calculated to deter, intimidate, harass, and punish Taylor for his association with and representation of persons and organizations advocating controversial ideas, and to prevent Taylor and deter other Kentucky lawyers from representing, in futuro, controversial clients and from advocating their ideas." *Id.* In contrast, Mr. Partin has alleged no violation of First Amendment rights, and there is no issue of a possible "chilling effect" on First Amendment activities in this case.

Defendants' motion is granted and the case is dismissed.

It is so ordered.