The Honorable Wendell L. GRIFFEN, Plaintiff,

v.

ARKANSAS JUDICIAL DISCIPLINE AND DISABILITY COMMISSION; James Badami, Executive Director of the Arkansas Judicial Discipline Commission; Frank J. Wills, III, Assistant Director; Michael Gott, Chairman; The Honorable David B. Bogard, member; The Honorable William A. Storey, member; The Honorable Chris E. Williams, member; John Everett, member; Laurie Bridewell, member;

Prince Claybrook, member; Arby Smith, member; and Reginald Hamman, member; all in their official capacities with the Arkansas Judicial Discipline and Disability Commission, Defendants.

No. CIV.02–770 DWF/SRN.

United States District Court,
E.D. Arkansas.

May 29, 2003.

Nate Coulter, Esq., Wilson, Engstrom, Corum & Coulter, Little Rock, counsel for Plaintiff.

Timothy Gerard Gauger, Esq., and Jeffrey Ryan Priebe, Esq., Arkansas Attorney General's Office, Little Rock, counsel for Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge [1] on April 28, 2003, pursuant to Defendants' motion to dismiss. For the reasons set forth below, Defendants' motion is granted.

### Background

This case arises out of the Honorable Wendell L. Griffen's constitutional challenges to the Arkansas Judicial Discipline and Disability Commission's imposition of a Letter of Admonishment that occurred as a result of a presentation that Judge Griffen made before the Arkansas Legislative Black Caucus in March 2002. Currently before the Court is Defendants' motion to dismiss, premised upon issues of exhaustion of state remedies, the *Rooker–Feldman* doctrine, *Younger* abstention, *Pullman* abstention, and sovereign immunity.

Judge Griffen has been a judge on the Arkansas State Court of Appeals since January 1996. Judge Griffen is also a distinguished alumnus of the University of Arkansas, receiving two degrees from the University and having been a member of the Alumni Association Board of Directors

---

1. This case comes before Judge Donovan W. Frank of the United States District Court for the District of Minnesota pursuant to an Order of Transfer dated February 24, 2003, and from assignment by the Honorable David R. Hansen, then-Chief Judge of the United States Court of Appeals for the Eight Circuit. Judge Hansen stepped down as Chief Judge at the close of business on March 31, 2003, and was succeeded by the Honorable James B. Loken.

from 1991–1995 and President of the Black Alumni Society of the Arkansas Alumni Association from 1998–2000.

On March 18, 2002, Judge Griffen attended a meeting of the Arkansas Legislative Black Caucus, a group of black Arkansas state legislators that is not an official committee of the state legislature. The meeting that Judge Griffen attended was focused on racial inequalities in higher education in Arkansas. At the meeting, Judge Griffen spoke from a prepared speech, the text of which has been provided to the Court. In his remarks, Judge Griffen identified himself as a member of the state Court of Appeals, and also identified his connection with the various University of Arkansas alumni groups. Judge Griffen stated, "While I wear many hats in life, I am not here to represent any viewpoint but my own." Judge Griffen further criticized the University of Arkansas' failure to recruit and retain black students, faculty, and administrators. Notably, toward the end of his speech, Judge Griffen stated as follows:

> In the coming weeks and months, you will be approached by leaders from these schools and their supporters. They will urge you to appropriate more tax revenue for their institutions. Do not reward the captains of colleges and universities with personnel actions, admission standards, and institutional practices and polices [sic] that exclude, inhibit, and mistreat black students, faculty, staff, and citizens by appropriating more tax revenue to their schools. Previous appropriations have been used to maintain longstanding inequities, so use your appropriation votes to show that you will not be a willing accomplice to that injustice. As legislators, cast your votes on budget appropriation bills to send a clear signal to the University of Arkansas and other schools. Show them you will not support schools where

black students, professors, and staff members are forced to watch their opportunities in higher education languish while their white counterparts enjoy most favored status at state expense. Chancellor White and Frank Broyles say they fired Coach Richardson because they lack confidence in his leadership, despite the successful results he produced over the past seventeen years. Whether you believe them or not-and I do not believe them-send them a budgetary vote of no confidence concerning sorry leadership about racial inclusion over the past 130 years at the University of Arkansas. SHOW THEM THE MONEY!

Judge Griffen further suggested that the Legislative Black Caucus members should not "empower [the University of Arkansas] with more money and time to perpetuate a situation and practices [they] know to be wrong."

In April 2002, the Arkansas Judicial Discipline and Disability Commission (the "Commission") received an anonymous complaint against Judge Griffen. The extensive complaint asserted, among other things, that Judge Griffen had violated the code of judicial conduct by speaking out publicly to the Legislative Black Caucus. Based upon its assessment of this complaint, the Commission conducted a probable cause hearing. At the probable cause hearing, Judge Griffen raised issues as to the constitutionality of the claims that were being raised against him. Specifically, Judge Griffen presented testimony of Professor Morton Gitelman, a Distinguished Professor of Law at the University of Arkansas who has done a significant amount of research in the area of the intersection of First Amendment rights with judicial discipline. Professor Gitelman testified about various cases from around the country that called into ques-

tion the judicial canons under which Judge Griffen was being investigated. In addition, Judge Griffen personally testified as to the constitutionality of these judicial canons.

Ultimately, the Commission voted to issue a Letter of Admonishment to Judge Griffen, pursuant to Rule 9(E)(2) of the Commission's Rules of Procedure, for violating Canon 4(C)(1) of the Arkansas Code of Judicial Conduct. Canon 4(C)(1) states as follows:

> A judge shall not appear at a public hearing before, or otherwise consult with, an executive or legislative body or official except on matters concerning the law, the legal system or the administration of justice or except when acting pro se in a matter involving the judge or the judge's interests.

In its Letter of Admonishment, the Commission stated that Judge Griffen's "appearance before the Legislative Black Caucus on March 18, 2002 was in contravention of Canon 4(C)(1) of the Code of Judicial Conduct." Further, the Report and Findings of Fact related to the Commission's decision concluded that "Judge Griffen's appearance at a public hearing before the Legislative Caucus of the Arkansas General Assembly was inappropriate" and "[h]is actions constituted a violation of the Arkansas Code of Judicial Conduct." Neither the Letter of Admonishment nor the Report and Findings of Fact issued by the Commission contain any opinion whatsoever on the constitutional issues that Judge Griffen had raised.

Judge Griffen did not seek review of the Commission's decision in state court. Rather, Judge Griffen brought this Complaint in Federal court to address what he believes to be the Constitutional issues raised by the Commission's action and the alleged lack of meaningful constitutional review in the State of Arkansas. By his Complaint filed on December 16, 2002, Judge Griffen requests declaratory and injunctive relief, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the First and Fourteenth Amendments of the United States Constitution. In addition, Judge Griffen seeks attorney fees pursuant to 42 U.S.C. § 1988.

## Discussion

### I. Subject Matter Jurisdiction

As a threshold matter, Defendants have challenged this Court's subject matter jurisdiction on the basis of issues such as exhaustion of state remedies and the *Rooker–Feldman* doctrine. Thus, Defendants' motion is brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

 A motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990). In a facial challenge to jurisdiction, the court only reviews the pleadings, presumes that all of the factual allegations in the complaint concerning jurisdiction are true, and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. *See Titus*, 4 F.3d at 593 (*citing Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731–32 (11th Cir.1982)); *Osborn*, 918 F.2d at 729 n. 6. For a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of Rule 12(b)(6). *See Titus*, 4 F.3d at 593; *Osborn*, 918 F.2d at 729, n. 6. "In short,

no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn*, 918 F.2d at 730.

Here, Defendants raise a facial challenge to Judge Griffen's Complaint. Defendants argue that based upon rules outlined in the Arkansas Constitution and the Arkansas Rules of Court, Judge Griffen should have brought his challenge to the Commission's decision by petitioning the Arkansas Supreme Court for a writ of certiorari to hear his appeal. Defendants assert that Judge Griffen's failure to do so divests this Court of jurisdiction. While conceding that the writ of certiorari measure is available, Judge Griffen asserts that this limited, discretionary possibility does not constitute an opportunity for meaningful constitutional review. Thus, Judge Griffen asserts that his action should remain with this Court.

The Judicial Discipline and Disability Commission was established "[u]nder the judicial power of the State" of Arkansas. *See* Ark. Const., Amend. 66(a). The Commission is comprised of nine members: three justices or judges, three licensed attorneys who are not justices or judges, and three other appointed members who are not attorneys, judges, or retired judges. *Id.* The Commission is charged with initiating, receiving, and investigating complaints regarding the misconduct of justices and judges. Ark. Const., Amend. 66(b).

The Commission's Rules of Procedure provide specific means by which the Commission must investigate a disciplinary matter related to a judge's conduct. Rule 8 of the Commission's Rules of Procedure provides that "any information submitted by a complainant or otherwise brought to the attention of the Commission stating facts that, if true, would be grounds for discipline shall initiate an inquiry relating to the conduct of the judge." Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission 8(A). Once the Commission receives such information, it is the duty of the executive officer of the Commission to conduct a prompt investigation. *Id.* at 8(B). The executive officer then determines "whether there exists sufficient cause to proceed to a probable cause determination." *Id.* If the Commission determines that a probable cause hearing is necessary, and so proceeds, the Commission then has three means by which to dispose of the case: (1) the Commission can dismiss the case if it finds that there has been no misconduct; (2) the Commission can issue an admonition against the judge; or (3) the Commission can proceed with a formal disciplinary hearing. *See id.* at 9(E)(1–3).

Pursuant to its rules, the Arkansas Supreme Court has exclusive jurisdiction of "[a]ppeals involving the discipline and disability of judges." *See* Arkansas Supreme Court Rule 1-2(a)(6). The Commission's Rule of Procedure 12 addresses the procedure by which the Arkansas Supreme Court reviews Commission decisions. Specifically, Rule 12(F) provides that "The Supreme Court may bring up for review *any action taken upon any complaint* filed with the Commission, and may also bring up for review a case in which the Commission has failed to act." Rules of Procedure of the Arkansas Judicial Discipline and Disability Comm'n 12(F) (emphasis supplied). Under Arkansas law, the Arkansas Supreme Court has jurisdiction to hear constitutional challenges to a disciplinary matter so long as these issues were raised before the Commission. *See Huffman v. Arkansas Judicial Discipline and*

*Disability Comm'n,* 344 Ark. 274, 42 S.W.3d 386, 390 (2001) (holding that a judge's constitutional challenges to Commission's admonition would have been considered by the Arkansas Supreme Court had such matters been on the record).[2]

Here, the Commission held a probable cause hearing and issued an admonition against Judge Griffen pursuant to Rule 9(E)(2). Rather than raising his appeal via a petition for writ of certiorari to the Arkansas Supreme Court, Judge Griffen brought this action in the Federal district court. Judge Griffen does not dispute that the rules allow for an aggrieved party to appeal an admonition to the Arkansas Supreme Court by a petition for a writ of certiorari. Rather, Judge Griffen disputes the Defendants' contention that this discretionary review precludes this Court from exercising its jurisdiction over Judge Griffen's constitutional claims. Judge Griffen asserts that this discretionary writ of certiorari procedural option does not allow for meaningful constitutional review.

As a preliminary matter, the Court finds that the path by which Judge Griffen has raised his constitutional claims is not so much an issue of exhaustion as it is an issue triggering the *Rooker–Feldman* doctrine. The principles of exhaustion imply that Judge Griffen, once he exhausted his state remedies, could eventually seek review of his constitutional claims related to the Commission's decision in this Court. However, under the *Rooker–Feldman* doctrine, this Court lacks jurisdiction to hear Judge Griffen's claims both now and after Judge Griffen properly raises his claims at the Arkansas Supreme Court.

Under *Rooker–Feldman,* federal courts other than the United States Supreme Court do not have subject matter jurisdiction to hear challenges to state court judgments. *Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir.2000) (citing *Dist. of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). Specifically, federal courts are precluded from adjudicating claims that are "inextricably intertwined" with state court judgments. *Id.,* citing *Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. 1303. A federal claim is "inextricably intertwined" with a state court judgment when "the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Id.* at 493, quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

Judge Griffen was disciplined in the form of a Letter of Admonishment by the Arkansas Judicial Discipline and Disability Commission, which is not a state court *per se.* Even so, and even considering that the Commission is not under the "general supervisory power [of] the supreme court" (*see Commission on Judicial Discipline and Disability v. Digby,* 303 Ark. 24, 792 S.W.2d 594 (1990)), the Commission acts "[u]nder the judicial power of the State" to investigate and determine sanctions on judges based upon complaints that are brought before the Commission. *See* Ark. Const., Amend. 66(a-b). This clearly serves an adjudicatory function. As

---

**2.** Judge Griffen's asserts that the Eastern District of Arkansas' unpublished opinion in *Donovan v. Arkansas Judicial Discipline and Disability Commission* points in a different direction. *See* Civ. No. LR–C–92–255 (Sept. 23, 1993) (holding that district court's abstention was inappropriate because there was no ongoing state proceeding in which the admonished judge could vindicate his constitutional rights). However, because *Huffman* was decided more recently and by the Arkansas Supreme Court, the *Huffman* Court's interpretation of its own jurisdictional authority is more persuasive.

such, the Commission's decisions should be considered to be of an "essentially judicial nature" to trigger the *Rooker–Feldman* doctrine.[3]

Moreover, Judge Griffen's claims are inextricably intertwined with issues that should be brought on appeal to the Arkansas Supreme Court, pursuant to Arkansas rules. Judge Griffen's constitutional claims are directly related to the Commission's decision. He raised constitutional challenges to the potential imposition of discipline under Canon 4(C)(1) before the Commission, thus preserving these issues on the record for review. A decision here on the merits would result in overturning the Commission's decision and would interfere with the potential state court adjudication by the Arkansas Supreme Court. Provided that the Arkansas Supreme Court can indeed provide meaningful review of Judge Griffen's constitutional claims (*see Huffman,* 42 S.W.3d at 390), this Court's interference with such matters is precisely what the *Rooker–Feldman* doctrine prohibits.

It should be noted that this procedure does not leave Judge Griffen without a remedy. Ultimately, if Judge Griffen is unhappy with the result from the Arkansas Supreme Court, whether that result be a denial of his petition for writ of certiorari or an unfavorable ruling on the merits of his claims, Judge Griffen can appeal that decision by petitioning for a writ of certiorari to the United States Supreme Court. This is simply the procedure which Judge Griffen has to follow in order to raise his appeal of the Commission's decision. The *Rooker–Feldman* doctrine prohibits this Court from interfering with that prescribed course of appeal.

## II. Abstention

In line with the Court's analysis under *Rooker–Feldman,* the Court finds that the availability of a state court proceeding in which to review Judge Griffen's constitutional claims, in addition to other factors, counsels against this Court's exercise of jurisdiction based upon principles of *Younger* abstention.

■ Under the *Younger* abstention doctrine, a federal court's jurisdiction is "constrained . . . by traditional principles of equity, comity, and federalism." *Alleghany Corp. v. McCartney,* 896 F.2d 1138, 1142 (8th Cir.1990), citing *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This *Younger* abstention principle was extended to non-criminal proceedings in *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *Middlesex* set out a three-part inquiry in which a federal court should engage to determine whether it should abstain from hearing federal claims: (1) is there an "ongoing state judicial proceeding"; (2) "do the proceedings implicate important state interests"; and (3) "is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* at 432, 102 S.Ct. 2515.

---

**3.** Another decision from the United States District Court, Eastern District of Arkansas, discusses this point. In *Partin v. Arkansas State Board of Law Examiners,* the district court held that it lacked jurisdiction to review an Arkansas Board of Law Examiners decision under the *Rooker–Feldman* doctrine because the Board of Law Examiners' decision was essentially judicial in nature. 863 F.Supp. 924, 926 (E.D.Ark.1994). Although the plaintiff in *Partin* had simultaneously filed for review in Arkansas Supreme Court, similar logic applies. The same issues of comity and federalism would be raised if this Court were to review a matter that Judge Griffen should have, but chose not to, bring in the proper state forum.

In *Middlesex*, an attorney brought a federal lawsuit challenging the constitutionality of disciplinary rules that had been brought against him by the New Jersey state ethics committee. *Id.* at 428–429, 102 S.Ct. 2515. Rather than answer the complaint that had been served against him, the attorney filed suit in federal court. *Id.* at 429, 102 S.Ct. 2515. At the time that the attorney brought his federal court claims, "no rule existed . . . to assure . . . that the New Jersey Supreme Court would hear the constitutional claims." *Id.* at 430, n. 8, 102 S.Ct. 2515. While the federal appeal was pending, however, the New Jersey Supreme Court intervened *sua sponte* and stated that it would hear the attorney's constitutional challenges to the disciplinary action. *Id.* at 430, 102 S.Ct. 2515. In addition, the New Jersey Supreme Court adopted a rule that allowed for an aggrieved party in a disciplinary hearing to seek interlocutory review of a constitutional challenge to the proceedings.[4] *Id.* at 436, 102 S.Ct. 2515 & n. 15. Upon review, the United States Supreme Court first held that bar disciplinary proceedings were "judicial in nature" and constituted an ongoing judicial proceeding. *Id.* at 433, 102 S.Ct. 2515. Second, based upon the principles enunciated in *Younger*, the Supreme Court held that the federal court should abstain from hearing the attorney's challenge to the state disciplinary proceeding. *Id.* at 434–35, 102 S.Ct. 2515. In so holding, the Supreme Court noted the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Id.* at 431, 102 S.Ct. 2515.

The Supreme Court further noted that "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Id.* (emphasis in original). Especially in light of the action taken by the New Jersey Supreme Court while the attorney's federal appeal was pending, the United States Supreme Court held that the attorney had an adequate opportunity to raise his constitutional challenges in the state proceeding. *Id.* at 435–36, 102 S.Ct. 2515. The Court held that "[i]t would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court." *Id.* at 437, 102 S.Ct. 2515, citing *Hicks v. Miranda*, 422 U.S. 332, 350, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

■ Although *Middlesex* involved a somewhat different procedural posture than Judge Griffen's case by virtue of the New Jersey Supreme Court's *sua sponte* review of the issue and their amendment of the rules granting interlocutory review of constitutional challenges, Judge Griffen's decision not to follow the proper procedure by which to challenge the Commission's holding does not alter the analysis. *See Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1143–44 (8th Cir.1990) (holding that a party cannot circumvent *Younger* by choosing not to pursue state appellate remedies and by, instead, choosing to initiate an action in federal court). Like the Supreme Court in *Middlesex*, this Court cannot presume that the state court will

---

**4.** The Supreme Court noted that the amended New Jersey Rule allowed for filing of a motion directly with the New Jersey Supreme Court for interlocutory review of constitutional issues raised by disciplinary proceedings. *Id.* at 436, n. 15, 102 S.Ct. 2515. If interlocutory review is not granted, the constitutional issues are preserved for later consideration by the New Jersey Supreme Court. *Id.* This procedure, the Supreme Court found, provides for New Jersey Supreme Court review even if the ethics committee issues only a private reprimand. *Id.*

not safeguard Judge Griffen's federal constitutional rights. *Middlesex*, 457 U.S. at 431, 102 S.Ct. 2515. Further, the elements of *Middlesex* are met. The Commission disciplinary proceedings and the subsequent opportunity for review with the Arkansas Supreme Court constitute an ongoing judicial proceeding. *Id.* at 432–34, 102 S.Ct. 2515. These proceedings implicate important interests in the State of Arkansas in monitoring the conduct of its own judges, as demonstrated by the fact that the State of Arkansas has organized this Commission to investigate and resolve issues related to such conduct. *Id.* at 434–35, 102 S.Ct. 2515. Finally, Judge Griffen raised his constitutional claims at the Commission's probable cause hearing, thus preserving those matters on the record for review by the Arkansas Supreme Court. *See Huffman*, 42 S.W.3d at 390. Thus, Judge Griffen should "'first set up and rely upon his defense in the state courts ... unless it plainly appears that this course would not afford adequate protection.'" *Id.* at 435, 102 S.Ct. 2515, citing *Younger*, 401 U.S. at 45, 91 S.Ct. 746; quoting *Fenner v. Boykin*, 271 U.S. 240, 244, 46 S.Ct. 492, 70 L.Ed. 927 (1926). *Younger* abstention prevents this Court from hearing the matter.

### III. Other Issues

Having decided the case on the basis of this Court's lack of subject matter jurisdiction, the Court need not address Defendants' assertions that *Pullman* abstention and issues of sovereign immunity prevent the Court from hearing this matter.

### Conclusion

The Court enters this opinion with some dismay. Mainly, the Court sympathizes with Judge Griffen's consternation over the deafening silence coming from the Commission and the Arkansas Supreme Court. The Commission and the Arkansas Supreme Court have decided, thus far, not to indicate in any manner that they will hear and review Judge Griffen's constitutional claims. This silence comes at a time when judges across the country are seeking guidance from judicial commissions and state supreme courts about the balance of their ethical obligations and First Amendment rights.

The record clearly reflects that Judge Griffen sought constitutional relief from the imposition of discipline by the Commission under Canon 4(C)(1). Yet at all times prior to, during, and after the probable cause hearing, the Commission remained silent about whether it could consider or had considered Judge Griffen's constitutional claims. The Commission's Letter of Admonishment and the Record and Findings of Fact make no mention that Judge Griffen raised these constitutional claims before the Commission. Further, these two documents were silent as to the process by which Judge Griffen could appeal the admonition. It is understandable that Judge Griffen was left with the impression that the Arkansas judiciary could not or would not afford him a remedy.

Moreover, the Arkansas Supreme Court has remained silent throughout these proceedings. Unlike the Court in *Middlesex*, the Arkansas Supreme Court has not taken Judge Griffen's constitutional claims for *sua sponte* review, nor has it attempted to amend its Rules of Court to clarify the procedure for an aggrieved party to challenge the constitutionality of the imposition of a letter of admonishment. At oral argument, Defendants' counsel assured this Court that the Arkansas Supreme Court would take this matter up for review if given the opportunity. The Arkansas Rules clearly provide for *sua sponte* review of the Commission's decision, yet the Arkansas Supreme Court has made no moves in that direction. Although the Arkansas Supreme Court has no obligation to

step into the fray *sua sponte,* the gravity of these issues might dictate that the Arkansas Supreme Court take a more proactive stance, if the Arkansas Supreme Court is to weigh in at all.

The Arkansas Supreme Court's silence is unfortunate at a time when judges are seeking guidance as to how to preserve their independence, yet also are seeking to promote the integrity and impartiality of the system. While a significant number of judges historically have attempted to seclude themselves in chambers and, at times, hide behind codes of judicial conduct, those days have past. Today's judicial landscape is a complicated patchwork of restrictions on judges intermingled with First Amendment considerations. And judges are attempting to make sense of this patchwork. The public quite reasonably expects judges to be visible in the community and to serve as role models and leaders. And perhaps this is as it should be to promote the public's faith in the judiciary. A judge has an inherent responsibility to contribute to the public understanding of the court's role of preserving the basic freedoms of our society. A judge also is obligated to assert a leadership role and to act as a role model. Much of this can be done without jeopardizing the integrity of the court system. A judge must always temper his or her leadership role with the judge's duty to appear impartial, so as not to compromise the judge's oath of office or the integrity of the judiciary. While a judge is not required to surrender his or her rights or opinions as a citizen, a judge must accept reasonable restrictions that promote the public's faith and trust in the system.

This balance is a difficult and delicate one, but it is entirely manageable. The real issue is achieving and maintaining such a balance. It calls into question what restrictions from judicial codes of conduct are reasonably necessary to promote and manage the public's faith and trust in the judiciary. While good judges are mindful of the need to protect the public confidence in the judiciary, they need guidance as to the interplay between First Amendment principles, judicial codes of conduct, and their own leadership roles. That is why guidance at this time, in the State of Arkansas and across the country, is paramount. Judges have a right to expect such guidance from their respective judicial ethics commissions and supreme courts.

Despite the silence of the Commission and the Arkansas Supreme Court on this important matter, this Court cannot review Judge Griffen's claims. Our federal system commits such decisions to the capable hands of the State Supreme Courts and the United States Supreme Court; this Court simply has no jurisdiction over this issue, no matter how vital it may be. Moreover, based upon the assertions of Defendants' counsel at oral argument on this matter, there are no procedural bars to Judge Griffen bringing his constitutional claims before the Arkansas Supreme Court. With this in mind, this Court leaves it in the hands of the Arkansas Supreme Court to provide guidance to Judge Griffen and other judges in Arkansas as to the constitutionality of their judicial obligations under the Arkansas Code of Judicial Conduct.

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 9) is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**